## BLACKMORE v. WOODWARD et al.

### (Circuit Court of Appeals, Sixth Circuit. December 9, 1895.)

### No. 308.

**1. NATIONAL BANKS—LIABILITY FOR ASSESSMENTS—BEQUEST OF STOCK—BENE-FICIAL OWNERSHIP.**

M. bequeathed to his wife, "for life or widowhood," 40 shares of stock in a national bank, together with other personal property, providing that she might use any of such personal property if necessary for her comfortable support, and that at her death or marriage, whatever should remain of such property should go in equal shares to his four children. The administrator with the will annexed of M.'s estate transferred the stock on the books of the bank to M.'s widow. The bank having become insolvent, and an assessment having been made by the comptroller on the shareholders, for which a judgment was obtained against M.'s widow, which remained unsatisfied, the receiver of the bank brought suit against M.'s administrator to compel payment of the assessment out of M.'s general estate. *Held* that, whether the widow took an absolute title to the stock by virtue of her power of disposal, or a life interest with remainder to the children, the beneficial ownership of the stock, in either case, had passed from M.'s estate, and the estate could not be made liable for the assessment.

**2. SAME—EFFECT OF TRANSFER.**

*Held*, further, that the administrator properly transferred the stock to the widow, and was not required to hold the legal title thereto, as administrator or trustee, during her life or widowhood, but that such transfer made no difference to the liability of the estate of M., since the beneficial interest would in either case have been in the widow and children.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

This is an appeal from a decree of the circuit court of the United States for the Middle district of Tennessee, dismissing a bill in equity. Blackmore, the appellant, is the receiver of the Commercial National Bank of Nashville, a corporation organized under the laws of the United States, which became insolvent. He filed his bill in the court below against M. D. Woodward, administrator with the will annexed of J. T. Matthews, and Mrs. N. C. Matthews. He averred in the bill that Mrs. N. C. Matthews appeared upon the books of the bank as a stockholder to the extent of 40 shares of $100 each, and that on the 15th day of June, 1893, the comptroller of the currency, on account of the insolvency of said bank, had assessed the shareholders 100 cents on the dollar, and that the same became immediately payable under the order of the comptroller; that he had recovered a judgment against Mrs. N. C. Matthews for the sum of $4,248.95, which remained unsatisfied. The bill further averred that, after the rendition of the judgment, complainant had ascertained facts with reference to the ownership of the stock which made it clear that Mrs. N. C. Matthews was not entitled to have the stock transferred to her on the books of the corporation, and that said stock had been so transferred by mistake; that the stock had been owned by J. T. Matthews, her husband, since deceased, and that, by virtue of his will, the stock should have been placed in the name of his administrator, and the dividends paid to the use of Mrs. Matthews for her life; that the whole estate of the testator was liable primarily for the debt; that a portion of the estate had been administered; and that the balance would be distributed as soon as possible, unless the administrator should be enjoined from further distribution. The prayer of the bill was: "That, upon a final hearing, judgment be rendered against defendant M. D. Woodward, as such administrator, for the amount of said debt; that said administrator be required to pay the same before distribution of anything more among the legatees and devisees under said will; that, if necessary, a sufficient amount of land belonging to the

estate be sold to pay said judgment; and that an injunction issue to restrain the administrator, M. D. Woodward, from paying out any other funds belonging to said estate until such judgment is satisfied."

By the first item of the will the testator directed that his debts and burial expenses be paid. Item 2 of the will was as follows: "I give and bequeath to my beloved wife, N. C. Matthews, for and during her natural life, or widowhood, but no longer, my home place, of twenty odd acres of land, whereon I reside, situated near Cedar Hill, the tract of about forty acres of land that I bought of L. F. Evans and wife, the tract of about thirty-eight acres of land that I bought at the sale of lands of Josiah Farmer, deceased, made under the decree of the county court of Robertson county, Tennessee, the tract of about sixty acres of land I bought of S. S. Byrns, my household and kitchen furniture, piano, and my horse, Fidler. My wife has authority to sell any of the real estate herein given to her, and buy any other real estate, taking the title to herself for life, or during her widowhood, with the remainder to my children. I also give and bequeath to my wife, for life or widowhood, ten shares of the paid-up stock in the Farmers' Building and Loan Association of Nashville, Tennessee, of which Lewis T. Baxter is president, and forty shares of stock in the Commercial National Bank of Nashville, Tennessee. My wife may use any of the personal property herein given her, if it becomes necessary for her comfortable support, I intending that she shall be well cared for so long as she remains my widow. At her death or marriage, the property herein given my wife, or whatever of it remains then, I devise it as herein directed in the sixth item of this will." The third, fourth, and fifth items of the will make specific bequests and legacies of his property to certain of his children. Item 6 was as follows: "The property herein given my wife for life or widowhood, and any property she may buy under the authority given her in item 2 of this will, and the rest and residue of my property and the proceeds of the sale of my real estate, I give and bequeath to my four children, Dr. W. B. Matthews, Laura Alford, Thomas B. Matthews, and Fannie C. Matthews, share and share alike, so that each one of them shall receive one-fourth of my estate, and charging my daughter Laura Alford with three thousand dollars for the lot and land I gave her in the third item of this will, and charging my son W. B. Matthews with fifteen hundred dollars for the five lots I gave him in the fourth item of this will, if he ——— to take them, and any note or notes I may hold on my child or children shall be taken from their share of my estate before they receive anything. I intend absolute equality in the division of my estate among my children." Item 7 of the will is as follows: "I give my buggy and harness, two cows and calves, and the hogs on the place, to my wife, N. C. Matthews, under the limitations and subject to the conditions prescribed in item 2 of this will." "Lastly, I appoint my friend, E. I. Black, and my son W. B. Matthews, executors of this, my last will and testament."

A general demurrer was filed by the administrator to the bill. The court sustained the demurrer, and dismissed the bill, as stated in the decree, on the ground that the assessment on the 40 shares of stock mentioned in the exhibit to the bill was properly chargeable against Mrs. N. C. Matthews, widow of Dr. J. T. Matthews; that the will gave the right to invade the principal of said stock, if necessary, for the proper support of Mrs. N. C. Matthews; that the same was not given as a life estate; and that the remainder did not belong to the estate.

Champion, Head & Brown, for appellant.

Edward H. East, for appellees.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts). We are clearly of opinion that the demurrer to the bill was rightly sustained. The bequest of the 40 shares of stock in the Commercial National Bank was a legacy. The stock was severed from the bulk of the testator's property by the operation of the will from the death of the tes-

tator, and was specifically appropriated, with its increase and emolument, for the benefit of the wife during her life or widowhood. 2 White & T. Lead. Cas. Eq. (4th Am., from 4th Lond., Ed.) pt. 1, p. 639. From that time on, the beneficial interest in the stock was in the wife for life or widowhood, the remainder to pass on her death or marriage to the four children of the testator. It is urged by the appellee that the disposition of the estate, after the death or marriage of the wife, was void because of the power of absolute disposition of the same conferred on her in the second clause of the will of this stock, but it is unnecessary for us to decide that question. Assuming that she took only a life interest in the stock, with power to sell so much of it as might keep her comfortable during life, and that the beneficiaries under the sixth clause of the will were interested, as remainder-men, in so much of the stock as was not sold or used by her during life or widowhood, it is very certain that the general estate could not be made to respond to any liability dependent on a beneficial ownership of the stock.

It is contended that the title of the stock should have remained in the administrator during the life or widowhood of the life tenant, and that, if it had been properly transferred to him as administrator, then the whole estate could have been made to respond. It is well settled that a bequest of personal property, enjoyment of which can only be had by its manual use, gives to the beneficiary the right of possession and the legal title, and the life tenant holds the property for the benefit of himself during life, and in trust for the remainder-men after his death. Weeks v. Jewett, 45 N. H. 540; Homer v. Shelton, 2 Metc. (Mass.) 194. Where, however, the personal property is in the form of stock, the benefits of which are to be derived by the payment of dividends, it is usually held that the executor or administrator may properly hold the title to the stock during the first estate therein, and pay the dividends to the life tenant. This, however, is in the absence of any provisions in the will tending to show that the testator intended the life tenant to have the full legal title to the stock, and to be himself or herself the trustee for the remainder-man. Wherever there is anything in the will tending to show that it was a testator's intention to have the life tenant take the title, that intention is to be carried out. We have no doubt that in the present case the testator intended his wife to take title to the stock bequeathed. Our opinion is based on the circumstance that he gave her the right to use the stock absolutely in so far as it might be necessary to render her comfortable. In giving her the right to use it, he necessarily gave her the right to sell it. To have the power to sell, she must have the title to the stock, so as to confer it upon a purchaser. The duty of the administrator or the executor with respect to the stock was fulfilled as soon as he properly transferred it to the name of the wife on the books of the bank.

We need not, however, rest our decision upon the right of the wife to have the stock transferred to her. Even if the administrator or executor must by the will retain title, the beneficial ownership of the stock during her life would be in the wife, and would pass at her death or marriage to the beneficiaries named in the sixth clause of the

will. Any judgment rendered against the administrator for assessments upon the stock could not be made out of the general estate, but must be made out of those for whose benefit the stock was held. Section 5152 of the Revised Statutes of the United States provides that persons holding stock as executors, administrators, guardians, and trustees shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner, and to the same extent, as the testator, intestate, ward, or person, interested in such trust funds, would be, if living and competent to act and hold the stock in his own name. The administrator or executor holding stock under the circumstances of this case would be a trustee for the life tenant and for the remainder-man. He would, with reference to this stock, occupy no relation of trust to the other persons interested in the estate; and it is hard to see how a judgment for stock liability against him de bonis testatoris could be rendered under the statute. Cases presenting analogous questions have arisen in the English courts of chancery. The question there was whether the general estate of the beneficiary under a legacy of stock in a company was liable for calls made upon unpaid portions of the stock subscriptions, and it has uniformly been held, where the calls were made and completed after the death of the testator, the beneficiary of the bequest must pay the same. See Armstrong v. Burnet, 20 Beav. 424; Day v. Day, 1 Drew & S. 261; Fitzwilliams v. Kelly, 10 Hare, 266. The reason for it is brought out very clearly in the distinction taken by Lord Chancellor Hatherly (then Sir William Page Wood, V. C.) in Re Box, 1 Hem. & M. p. 552. It was there held that the rule did not apply to calls made in the lifetime of the person who was tenant for life of the whole estate, including the shares of the entire fund. The true test was held to be whether the shares were, by the terms of the will, to be regarded as separated from the general estate at the date of the call.

On the whole case, we affirm the decree of the court below.