FOSTER v. LINCOLN'S EX'R.

(Circuit Court of Appeals, Second Circuit. February 23, 1897.)

INSOLVENT NATIONAL BANKS—ASSESSMENTS AGAINST SHAREHOLDERS—TRANSFER OF SHARES.

L., a stockholder in the D. national bank, transferred his stock, shortly before its failure, to his married daughter and other minor children. It appeared from the circumstances surrounding the transaction that L., though perhaps not supposing the D. bank to be actually insolvent, was advised of facts, not generally known, which indicated such uncertainty as to its ability to stand a run, which had apparently begun, as to make it safer for him to dispose of his stock forthwith, and that the transfer was made with the intent that, if all came out well, his children should have the stock, while, if the bank met with disaster, he would not be obliged to throw good money after bad. *Held*, that the transfer so made could not stand against the creditors of the bank, and L. was liable, at the suit of its receiver, for an assessment on the stock.

Appeal from the Circuit Court of the United States for the District of Vermont.

This is an appeal from a decree of the circuit court, district of Vermont. The suit was brought by the receiver of the First National Bank of Deming, N. M., to enforce an assessment made by the comptroller upon the stock of that bank against Benjamin F. Lincoln, of Lyndon, Vt., as one of the actual stockholders of the bank, and seeking to set aside a transfer made by him, shortly before the failure of the bank, to his children, who were made defendants. Lincoln died pending the litigation, and the action was revived and continued against his executor. The circuit court decreed in conformity to the prayer of the bill. 74 Fed. 382.

C. A. Prouty, for appellant.

W. L. Burnap, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

PER CURIAM. The appellant was himself president of the National Bank of Lyndon, and held 25 shares in the Deming bank. The Lyndon bank held 50 shares, and other individuals and banks in this vicinity held shares. As found by the circuit court, "on September 21, 1891, he transferred his stock in the Deming bank, in equal parts, to his five children, one of whom was a married woman, two of whom were minors, and all of whom were irresponsible for assessments on it." The transfer was without consideration. It was completed by issuing new certificates of stock in exchange for the old one before the bank failed, on February 3, 1892. Mr. Lincoln was also a stockholder in the First National Bank of Silver

City, N. M., of which stock similar transfers were made at the same time. Both banks were practically under the same management, having the same president, and both failed at the same time, and are in charge of the same receiver.

The only question in the case is whether the transfer was so far fraudulent that, as between the creditors of the bank (represented by the receiver) and the defendants, it should be set aside. The defendant B. F. Lincoln testified that some time in June, 1891, he proposed to his wife to transfer property to the children; that the matter drifted along until about the 1st of September, when the children began to ask that he give them property; that he said to them he would give each of them $1,000 in New Mexico bank stock, and on September 21st he made the transfer in question; that he attended a meeting at the Merchants' Bank of St. Johnsbury, Vt., in September, 1891,—concededly, it was two or three days prior to September 21st. The meeting was held to consider what action to take in reference to telegrams sent to C. M. Chase, a director in the Lyndon bank, by C. H. Dane, the president of the First Deming, and by E. B. Chase, the cashier of the Silver City. C. M. Chase being absent at the time, his brother Henry Chase opened them, and it was on account of those telegrams that Lincoln attended the meeting at St. Johnsbury. He saw the telegrams, as he says, either at the meeting, or on the cars coming down. .He further testified that he thought this was not the first time that telegrams had come from these Western banks for funds; that he did "not think the question of solvency of the Deming bank was discussed" at the meeting; that he did not transfer the stock in consequence of the receipt of the telegrams, or of anything that was said at the meeting; that at the time of transfer he valued the stock above par, and believed the bank to be solvent; that he expected dividends would be received, and that previous to the transfer no rumor or information had come to his knowledge touching the solvency of the Deming bank; and that he first had reason to suppose that the institution was insolvent about February 4, 1892. This testimony is that of an interested party, and should be weighed with the caution usually required when such testimony is under consideration, and it may be noted that his statement as to what took place at the meeting is somewhat indefinite. The telegrams referred to are as follows:

"September 15, 1891.

"To C. M. Chase, Lyndon, Vermont: Please remit, and notify by wire as soon as possible, $5,000 to First New York, account First Deming, and $3,000 to Western National, New York, our use. I don't need the sixty-six hundred for personal use. I forward by express to-day over $16,000 bills receivable as collateral. Everything quiet, but we need rediscounts for thirty or sixty days. Important. Answer. C. H. Dane."

"Silver City, N. M., Sept. 15, 1891.

"To C. M. Chase, Lyndon, Vt.: Remit as requested by Dane quick as possible. E. B. Chase."

From the other evidence in the case it appears that the meeting at St. Johnsbury was attended by the president and cashier of the Merchants' National Bank of St. Johnsbury, by two of the directors

of the Citizens' Savings Bank of the same place, and by Lincoln and Henry Chase, representing the Lyndon bank. All three banks were interested in the Deming bank, and, although none of them cared to send the money, it was finally agreed that they would do so, contributing equally, since it was going to be a help. One of the persons present at the interview testifies that an explanation was made by Henry Chase, who was the uncle of the cashier of the Silver City bank, and brother-in-law of the president of the Deming bank, regarding the condition which led to the call for the loan; that the explanation was to the effect that O. H. Dane had been involved in a lawsuit with M. M. Chase, and report of foreclosure proceedings had caused some mistrust on the part of depositors, which had led to a withdrawal of deposits; that there ensued some discussion as to the probable length of time that the bank would be able to stand a continuing run. None of the other persons present at the interview explicitly contradicts this account.

It is well settled that when the holder of shares of stock in a national bank transfers them to a person known to him to be irresponsible, with the intent of escaping liability as a shareholder, such transfer will be held void as to the creditors of the bank. Bank v. Case, 99 U. S. 628; Bowden v. Johnson, 107 U. S. 251, 2 Sup. Ct. 246. Intent in such cases need not be separately proved by direct evidence; it may be found as an inference from all the facts in proof. Upon the evidence in this case, we have little doubt that defendants' testator, while he may not have supposed the Deming bank was actually insolvent, was advised of facts, not generally known, which indicated to him that there was such uncertainty as to its ability to stand a run, which had apparently begun, that it would be safer for him to dispose of his stock forthwith, and that the transfer was made to his irresponsible children with intent that, if all came out well, they might have it, while, if the bank should meet with disaster, he would not have to thrown good money after bad. If made with such intent, it cannot stand against the creditors of the bank, whom the receiver represents. The decree of the circuit court is affirmed, with costs.