CASE 103.—ACTION BY C. S. WEAKLEY, RECEIVER, AND OTHERS AGAINST C. C. McCLARTY AND OTHERS. —December 8, 1909.

## Weakley, &c. v. McClarty, &c.

Appeal from Shelby Circuit Court.

CHARLES MARSHALL, Circuit Judge.

. Judgment for defendants, plaintiffs appeal.—Affirmed.

1.  Banks and Banking—Stockholders' Liability.—Where the stockholders of a solvent banking corporation in good faith sold their stock, indorsing the shares in blank, and delivering them to the bank's cashier, with the understanding that he would do what was necessary to effectuate a transfer on the bank's books, and the cashier failed so to do, such stock holders were not after two years and on the bank's becoming insolvent, liable to its creditors under Ky. Stat. section 547, imposing a double liability.

GREENE, VAN WINKLE & SCHOOLFIELD, E. B. BEARD and CHARLES MARSHALL for appellants.

WILLIS & TODD, WM. FURLONG, J. C. BECKHAM & SON and P. J. BEARD for appellees.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

The Bank of Waddy, having become insolvent through the fraudulent peculations of its cashier, T. B. Hancock, was placed in the hands of a receiver by the Shelby circuit court, and thereupon the receiver instituted this action against various persons who either were stockholders or had been stockholders for the purpose of enforcing against them the double liability clause of section 547, Ky. Stat.

The appellees, on this appeal, had been stockholders of the insolvent bank, but had sold their stock more than two years before the institution of the action against them, although the transfer was never formally entered upon the stock book required by law to be kept. The appellees simply indorsed their shares of stock by signing their names to the blank form of transfer and power of attorney to enter the same upon the books of the bank which was printed upon the backs of the shares.

After this was done, the shares were turned over to the cashier of the bank, T. B. Hancock, who was really the purchaser, but who was purporting to manage the purchase for others. The question involved is whether or not, after the stockholders have in good faith sold their stock in a solvent corporation, indorsing it in blank as above stated, and then turning the shares over to the cashier of the bank, either with the actual or implied understanding that the officer would do what was necessary to effectuate a legal transfer of the stock on the books of the bank, he failed so to do, are the stockholders, after the ex-

piration of two years from the date of the transaction, liable to the creditors of the bank, it being insolvent?

The learned special judge, W. O. Harris, held that the appellees had done all that could be reasonably expected of them to effectuate the transfer, and were not liable on their stock after the expiration of the statutory period of two years. His opinion, which was in writing, sets forth the salient facts together with his conclusion of law thereon, and we adopt it as our opinion in this case. It is as follows:

"This is a suit by the receiver and creditors of the Waddy bank to enforce what is known as the double liability against its stockholders. Several of the defendants unite in their answer, and may be considered jointly, while others will be discussed singly. The following defendants file a joint answer, namely: L. W. Ditto, A. D. Ritter, J. S. Smith, H. A. Campbell, C. A. McCormick, W. T. Snider, Jennie Campbell, Lillian Ditto, F. E. and J. S. Smith, trustees of Nina Smith, and Mrs. E. H. Vaughan. Their defense is that, while they at one time owned stock in the bank, it was transferred more than two years prior to the institution of this suit, and that they are for that reason not liable under section 547 of the Kentucky Statutes. The alleged transfer was made January 11, 1904, and the suit was brought May 8, 1907.

The facts in relation to the transfer are narrated by several of the witnesses, and amount to about this:

"Defendants had been in correspondence by letter, telegram, and telephone with C. C. McClarty, of Louisville, with relation to a sale to him of their stock, and thought, and had every reason to think, he had bought it. On January 11, 1904, Ditto, Campbell, and several others of the sellers gathered at the bank

with certificates for eighty-four shares indorsed in blank and delivered them to Hancock, the cashier, to be attached to a draft on McClarty. Hancock received the certificates and paid for them by giving credits on the respective passbooks. Whether or not he drew the draft on McClarty the testimony does not disclose. Hancock has absconded, and McClarty, though examined as a witness, is extremely guarded and unsatisfactory in his statements. His clerk, Lloyd, is equally or more so. Certain it is that the bank of which McClarty was cashier turns up as holder of the certificates (and the bag), and McClarty denies all personal connection with the transaction. Either he or his bank or Hancock was the purchaser. Certain it is that Hancock acted either as purchaser or purchaser's agent, and that the certificates indorsed with a blank power of attorney to make a transfer on the books of the bank were delivered to him. He was cashier and sole executive officer of the bank, and he knew well the facts which the court has laboriously gleaned from this record. If he knew the intention and desire of the sellers that the stock was to be transferred, and failed to transfer it, then his failure was the failure of the bank, and the transfer must be regarded as having been made.

If, on the other hand, he knew, or had reason to believe, that no transfer was intended, and that the sellers expected to remain as ostensible owners, then there was no duty on his part to make the transfer, and none was made in law or fact. The mere fact that they were selling their stock certainly creates a strong presumption that they wished it to be transferred. The surrounding facts point in the same direction. Several of the sellers had been directors and had been summarily turned out. They and their

friends wanted to get out of the bank, and McClarty and Hancock, one or both, wanted to get into it. All this was well known to Hancock, and, when the certificates were passed over the counter to him, he well knew that it was a sale to somebody, either to him or to McClarty as his principal.

"It is strongly urged that Ditto and his companions did not intend a transfer because they attached the certificates to the draft on McClarty, and this fact at first seemed conclusive to the court. But, does it follow that, because the certificates went to Louisville, the transfer could not have been noted on the bank's books, if Hancock had done his duty? There is nothing in the statute which required certificates to be issued to all and a stockholder is as much a stockholder without as with one. It is true that it is usual in corporations which issue certificates to call in the old and issue new when a transfer is made, but that fact is probably not generally understood, nor does the law require it. The only requirement is that the corporation shall keep a transfer book and that all transfers shall be noted on it. Courts have often pointed out that this book is to be kept by the corporation, not by the stockholder, and that it is the corporate officers who must note the transfers. If, therefore, the stockholder surrenders his certificate and requests the transfer to be made, he has done all he can do and all the law required him to do. The Supreme Court likens him to a man who hands the county court a deed, and pays the recording fee. He has done his part, and, if the clerk fails to do his, it is the fault of the state, and not of the citizen, and the latter should not suffer for it. Nor is it necessary that an express request to the officer be shown in either case. If the facts show that a transfer in

one case or a recording in the other was intended and understood, it is just as much a request as if the words were spoken. The court cannot doubt that Hancock knew that these farmers and their wives wanted to sell their stock and get out of his bank. He well knew that they had no arrangement with him or McClarty or any one else to remain as ostensible stockholders. The transaction spoke for itself, even if he had not so well understood it.

"The case seems to be governed by the decision of the Court of Appeals in Bracken v. Nicol, 124 Ky. 628, 99 S. W. 920, 30 Ky. Law Rep. 864, 11 L. R. A. (N. S.) 818, and that of the Supreme Court of the United States in Whitney v. Butler, 118 U. S. 655, 7 Sup. Ct. 61, 30 L. Ed. 266, and Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571.

"In the last case the court laid down as a rule that: 'Where a transfer of stock is made and delivered to the officers of a bank and such officers fail to make entry of it, the acts referred to will operate as a transfer on the books and extinguish the liability as stockholder of the transferror.'

"The transfer here referred to was the delivery of the certificate to the bank with the power of attorney signed in blank, as was done by Ditto and his companions. Judgment must, therefore, go in their favor.

"S. S. Weakley: This defendant admits that he owned 30 shares of the stock which he alleges that he sold and transferred to Landon Bailey, January 7, 1904, and that he still owns four shares which he bought from McCormick. His deposition and that of Landon Bailey show that the stock was sold to Hancock and the certificate indorsed in blank and delivered to him. The facts are closely analogous to those

of the case of Bracken v. Nicol, supra, and judgment may go for defendant as to the thirty shares."

Judgment affirmed.