## Robinson-Pettit Company v. Sapp, etc.

(Decided October 22, 1914).

### Appeal from Ohio Circuit Court.

1. **Judgment—Transfer of Stock—Finding of Chancellor.—**The judgment of the chancellor on a question of fact will not be disturbed, where, on the whole record, the mind is left in doubt as to the truth; and where a transfer of stock is absolute on its face, and the parties have treated the transfer as absolute and not as a mortgage, the finding of the chancellor that the transfer was absolute will not be disturbed.

2. **Banks—Transfer of Stock—**The transferee of bank stock is liable to the creditors under the statute, although the transfer has not been recorded on the corporate books, it appearing that he was the real owner of the stock, and had failed to have the transfer recorded to avoid the statutory double liability.

3. **Banks—Transfer of Stock.—**The transferee of bank stock who holds it for eighteen months without complaint, and in the meantime investigates the condition of the bank, cannot be heard after the failure of the bank to complain that the transfer to him was fraudulent.

BARNES & SMITH for appellant.

ERNEST WOODWARD for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

The Ohio County Bank was incorporated in the year 1909 with a capital stock of $15,000. Z. Wayne Griffin held ten shares of the stock of the par value of $1,000. Griffin fell in debt to the Robinson-Pettit Company, and on August 13, 1909, he transferred the stock to it, delivering to it the stock and the following writing:

"Know all men by these presents, that I, Z. Wayne Griffin, for value received, have bargained, sold, assigned, and transferred, and by these presents do bargain, sell, assign, and transfer unto Robinson-Pettit Company 10 shares of stock, standing in my name on the books of the Ohio County Bank, Hartford, Ky., and do hereby constitute and appoint ———— true and lawful attorney, irrevocable, for me and in my name and stead, to sell, assign, transfer, and set over all or any part of said stock; and for that purpose, to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power, hereby ratifying and confirming all that my said attorney, or

his substitute or substitutes, shall lawfully do by virtue hereof.

"In witness whereof, I have hereunto set my hand, the 13th day of August, 1909.

"Witness:                                    "Z. Wayne Griffin.

"J. Thos. Schorch,

"Nelson B. Freedhouse."

Subsequently the bank failed and this action was brought against the Robinson-Pettit Company as a stockholder to enforce the double liability under Section 595 Ky. Stat., which provides:

"The stockholders of each bank organized under this article shall be individually responsible, equally and ratably, and not one for the other, for all contracts and liabilities of such bank to the extent of the amount of their stock at par value in addition to the amount of such stock;   *   *   *   and no transfer of stock shall operate as a release of any such liability existing at the time of such transfer,   *   *   *."

The Robinson-Pettit Company defended the action, insisting (1) that it only held the stock as a pledge to secure its debt; (2) that the stock had not been transferred to it on the books of the bank and had never been presented for transfer; (3) that the transfer of the stock to it was fraudulent. The circuit court gave judgment in favor of the plaintiff. The defendant appeals.

(1)   The testimony for the Robinson-Pettit Company by three of its officers is to the effect that the stock was turned over to it by Griffin simply to secure its debt, and that they were to sell the stock and account to him for the proceeds. On the other hand Griffin testifies that it was an absolute transfer, the company taking the stock at $1,000, its par value, and crediting him by this sum on his debt. In this he is sustained by the ledger of the Robinson-Pettit Company, a copy of the entries in the ledger having been filed in the action; and he is also sustained by the testimony of the officers of the bank. The stock at the time it was transferred had a book value of $1.20, and it was supposed to be worth something above par. Griffin went into bankruptcy after he had transferred the stock, and the Robinson-Pettit Company in proving up their claim against the bankrupt estate, credited it by $1,000 for this stock, making no mention that the stock was held as a pledge, or explanation about the credit. It thus took the chance of making what it

could out of the stock if sold above its par value. We give some weight to the finding of the chancellor on a question of fact; we do not disturb his finding where on the whole record the truth is doubtful; and in view of the fact that the transfer is absolute on its face, we cannot disturb the chancellor's finding supported as it is by the circumstances and the conduct of the Robinson-Pettit Company.

2. Sections 545 and 546 Ky. Stat. provide:

"The shares of stock shall be transferred on the books of the corporation in such manner as the by-laws thereof may direct, and every person becoming a stockholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of prior stockholders. (Section 545 Ky. St.)

"A book shall be kept by every corporation in its principal office, in which shall be entered the name, post office address and number of shares of stock held by each stockholder, and the time when each person became a stockholder; also all transfers of stock, stating when, the number of shares transferred, and by and to whom * * *." (Section 546 Ky. Statutes.)

It appears from the evidence that the Robinson-Pettit Company had not had this stock transferred on the books of the bank; for the reason that it anticipated that there might be some trouble about the solvency of the bank and it desired to avoid any liability on the stock. It is clear that under the statute the transferrer remains liable to the creditors until he has the transfer put upon the books of the company; but where, as in this case, the transferrer is bankrupt, and the transferee, who is the real owner of the stock, fails to have the transfer put upon the books to avoid any liability, the purpose of the statute would be entirely defeated if the transferee were not held liable. In Cook on Corporations, Section 260, the rule as to the liability of the transferrer is thus stated:

"The law is well settled that the transferrer of stock is liable to corporate creditors on his statutory liability, up to the time of a registry of the transfer, to the same extent that he would be if no sale and transfer of the certificate had been made until the date of the registry. Until registry is made corporate creditors may hold the transferrer liable, as though he had not sold his stock. As to them the transfer will be deemed to have been made

only at the date of the record thereof in the corporate books.''

Again in Section 261 he says:

''A purchaser of stock may be held liable to creditors upon the liability imposed by statute, although the transfer is not recorded.'' (See also 10 Cyc., 717.)

Were the rule otherwise, the purpose of the statute would be entirely defeated. In imposing the double liability upon the stockholder, the aim of the statute is to secure the creditors of the corporation, and if the real stockholder could avoid liability simply by neglecting to have the transfer recorded on the books of the corporation, and allowing the stock to remain in the name of the bankrupt, the security intended for the creditors would be destroyed. To allow this would be to allow the real stockholder to profit by his own wrong, and by his failure to do what he ought to have done, to avoid the liability' put upon him by the statute. To effectuate the purpose of, the statute, it must be held that until the transfer is properly registered the creditors of the corporation may look to the transferrer, or at their election to the transferee; and that as between the transferrer and the transferee, either may in such a case look to the other to repay to him any money he has to pay the creditor which the other in good faith should have paid. The real owner of the stock should sustain the loss, and if the nominal owner of the stock has it to pay he may in such a case recover from the real owner; but the creditor may look either to the transferrer or the transferee. Under this rule, as the Robinson-Pettit Company was the real owner of the stock, it was properly held liable to the creditors of the bank.

3. The Robinson-Pettit Company held the stock in the bank for something like eighteen months before the bank failed. It sent two officers to examine the condition of the bank, and it made no complaint of the transfer of the stock to it until after the bank failed. Griffin did not know that the bank was insolvent when he transferred the stock. On the contrary both parties then supposed the stock was worth above par, although in fact the bank was insolvent. The case falls within the rule laid down in Ried v. Owensboro Savings Bank, 141 Ky., 444; Robinson v. Owensboro Savings Bank, 150 Ky., 50; Little v. Owensboro Savings Bank, 150 Ky., 331.

Judgment affirmed.