# Fitzpatrick's Guardian v. First National Bank of Whitesburg's Receiver.

(Decided Oct. 30, 1934.)

94

ASTOR HOGG for appellant.
HARRY L. MOORE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

When J. D. Fitzpatrick died in August, 1927, he owned fifty-five shares of stock of the First National Bank of Whitesburg. He was survived by his widow and five minor children, but his widow died shortly afterward. Pursuant to an order of court made in September, 1930, in a suit settling the estate, fifty-three shares of the stock were distributed among the guardians of the respective children as heirs, including twelve shares to the guardian of Pauline Fitzpatrick. This stock was accordingly reissued and promptly transferred on the bank's register of stockholders to the guardians.

The remaining two shares continued to be registered in the name of the decedent. In January, 1931, Pauline's guardian sold her twelve shares to S. L. Bastin and they were duly transferred to him on the books of the bank. Thus was the stock registered when the bank was closed for insolvency and placed in the hands of a receiver for liquidation in June, 1932. In a short time an assessment and requisition of 100 per cent. was made by the comptroller of the currency on the stockholders.

This suit was instituted by the receiver against Fitzpatrick's administrator and his children and their guardians to recover of the administrator $4,300 on account of the assessment against forty-three shares of stock. The petition further asked that a sufficiency of certain real estate owned by the decedent at the time of his death and which descended to his children be sold to satisfy the claim. It will be observed that this was twelve shares less than the number originally held, which is represented by the stock transferred to Pauline's guardian and by him to Bastin eighteen months before the bank became insolvent. The effect of the suit, however, is to subject her inheritance to the satisfaction not only of the two shares of stock remaining in the name of her deceased father, but of the forty-one shares which had long before been transferred to her brothers and sisters. It is further stated in the petition that the administrator was claiming to have fully administered the estate and had nothing in his hands as such fiduciary.

The separate answer of Pauline's guardian set up the foregoing facts in greater detail than that of the petition, and furthermore alleged that Bastin had fully paid and satisfied the assessment against the twelve shares once owned by her. It is also shown that at the death of Fitzpatrick and at the time of the distribution and transfer of the stock the bank was a solvent and going concern. A demurrer to the answer was sustained and, upon a failure to plead further, it was dismissed. The appeal is from that judgment.

The argument of the appellee and the ground upon which the judgment rests, as we understand, is: (1) The obligation of a stockholder in a bank to respond to an assessment in consequence of insolvency is contractual and is not extinguished by his death, but like other obligations survives and is enforceable against his

estate and any property which may have been distributed to his heirs or devisees; (2) that such stock must be transferred to a person not only legally capable of holding it, but legally bound to respond when assessments are made and who is not at liberty to repudiate the obligation; (3) that the transfer or distribution of the stock in this case to the infants was ineffectual to relieve the estate since they were incapable of assenting and were without legal capacity to assume the liability that attached to the stock; (4) hence the decedent's estate and its assets or that part which descended to his heirs are subject to appropriation for the satisfaction of the entire obligation.

Though the provisional obligation for an assessment of stock is imposed by law and controlled by the terms of the statute, yet the liability is regarded as contractual in its nature. The agreement to respond contingently is implied by the purchase of the stock and is just as obligatory as the original liability to pay for it. Michie on Banks & Banking, vol. 2, page 108, sec. 22; Richmond v. Irons, 121 U. S. 27, 7 S. Ct. 788, 30 L. Ed. 864; First National Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 739, 43 L. Ed. 1007; McDonald v. Thompson, 184 U. S. 71, 22 S. Ct. 297, 46 L. Ed. 437; Austin v. Strong, 117 Tex. 263, 1 S. W. (2d) 872, 3 S. W. (2d) 425, 79 A. L. R. 1528.

Therefore, it is a sound conclusion that to exonerate a shareholder from his individual liability, the transfer of the stock must be made to one who can succeed to such liability and become legally bound to meet the assessments. Assent or agreement is an element to the transfer. It has been held that where the mere transfer of the stock of a national banking association on its books to one without his knowledge or consent, he cannot be held to have assumed or incurred the liability and may repudiate the transfer. Michie on Banks & Banking, vol. 2, page 170, sec. 132, page 186, sec. 448; Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531; Finn v. Brown, 142 U. S. 56, 12 S. Ct. 136, 35 L. Ed. 936; Austin v. Strong, supra. And, accordingly, since an infant does not have the necessary legal capacity to bind himself for this contingent liability as a stockholder in a national bank, either by his own volition or by having it thrust upon him by a direct transfer, he does not become personally liable for the assessment. Clark v. Ogilvie,

111 Ky. 181, 63 S. W. 429, 23 Ky. Law Rep. 552; Aldrich v. Bingham (D. C.) 131 F. 363; Foster v. Chase (C. C.) 75 F. 797; Kerr v. Urie, 86 Md. 72, 37 A. 789, 38 L. R. A. 119, 63 Am. St. Rep. 494; Mellott v. Love, 152 Miss. 860, 119 So. 913, 64 A. L. R. 968.

The principle is considered and applied in the comparatively recent case of Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 661. The purchaser, Richardson, bought stock from the registered holder and received certificates indorsed in blank, with the intent at the time of giving the stock to his minor children, but without knowledge at the time of the failing condition of the bank or any intent to avoid the stockholder's liability. With like knowledge and intent he caused a transfer to be made on the books of the bank to the children. It was held that Richardson was not relieved from liability for an assessment on the stockholders subsequently imposed for the benefit of creditors since the transferees, being minors, were without legal capacity to assume the obligation and could avoid the entire transaction upon coming of age. In the meantime the transfer having resulted to their disadvantage, the law avoided it for them, leaving the liability of Richardson for the assessments unaffected. See, also, Mellott v. Love, 152 Miss. 860, 119 So. 913, 64 A. L. R. 968; Rutledge v. Stackley, 162 S. C. 173, 160 S. E. 429, 78 A. L. R. 427.

But we do not consider that principle applicable to the facts of the case at bar. Where stock is bequeathed or descends to an infant, there can be no doubt of the power of a guardian to accept the same and hold title thereto, although there arises no personal liability either on the part of the infant or the guardian for the assessment in case of insolvency. Our statute (section 4706, Kentucky Statutes) authorizes fiduciaries to invest their trust estates in such interest-bearing or dividend-paying securities as are regarded by prudent business men as safe investments but certain classes are excluded. Bank stock is not among the exclusions unless it should be a corporation which has not been in business at least ten years and during that time has defaulted in payment of the principal of its bonded debt. Cf., sections 547, 595, Kentucky Statutes. This power of a guardian to hold stock in a national bank is recognized by the terms of the federal law pertaining to responsibility of shareholders of double liability. Section 66, title 12, U. S.

Code, 12 USCA sec. 66 (section 5152, Revised Statutes), is as follows:

"Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

Our case of Clark v. Ogilvie, supra, is widely cited with approval. Two children inherited shares of stock in a national bank situated in Tennessee from their father. The stock had been transferred to their guardians some time before the bank became insolvent, and the receiver brought an action in the chancery court of Tennessee against them and their guardian to recover of their estate an assessment of the stock. They had also inherited from their father certain land in that state which was sold under the judgment but proved insufficient to satisfy the claim. Afterward, and when the children had arrived at full age, they inherited some land in Kentucky from their maternal grandmother and the receiver brought suit in the county where the land was located to subject it to the payment of the balance due on the assessment. We held that since the federal statute made only the estate of the minor in the hands of his guardian liable for the assessment, their property subsequently acquired could not be taken in payment for the balance.

We think, therefore, that the distribution and transfer of the stock of the deceased stockholder to the guardians of his heirs was authorized and valid, so that his estate did not remain responsible for the assessment due to the insolvency of the bank which arose after the transfer. The estates of his legatees who were stockholders through their guardians at the time of the insolvency may be liable, but not that of their predecessor in title. The stock was no longer property of the decedent's estate for the purpose of assessment. Blackmore v. Woodward, 71 F. 321, 18 C. C. A. 57; Witters v. Sowles (C. C.) 32 F. 130.

The basis of the judgment subjecting the undivided interest of the infant, Pauline, in the land which the children inherited from their father, as we have stated,

was that his estate remained liable because of the invalid transfer and this was following that estate into their hands. To the extent that this was on account of the forty-one shares distributed and transferred to her brothers and sisters, the judgment is erroneous.

Pauline's relation to the two shares which continued in the name of the decedent on the bank's register is different. Ordinarily, as to the bank and its creditors, a transfer on the books is necessary to make the transferee a stockholder and to relieve the record owner of liability for assessment. This manner of transfer was designed to protect the bank, its stockholders, and its creditors from transfers which are fraudulent or made for the purpose of evading just responsibilities. Thurber v. Crump, 86 Ky. 408, 6 S. W. 145, 10 Ky. Law Rep. 59; Weakley v. McClarty, 136 Ky. 837, 125 S. W. 265, 136 Am. St. Rep. 279; Robinson-Pettit Co. v. Sapp, 160 Ky. 445, 169 S. W. 869; State ex rel. Freeling v. Ware, 82 Okl. 130, 198 P. 859, 45 A. L. R. 127; Wright v. Keene, 82 Mont. 603, 268 P. 545, 60 A. L. R. 109. This liability does not terminate with death, but continues until there has been a valid transfer on the books of the bank or until it has been rightfully demanded. It is essential to save an estate from liability that there should be such a transfer even though the estate was settled and distributed prior to the insolvency of the bank. That being so, the estate may be followed into the hands of distributees and the amount of the assessment enforced to the extent of the estate so reaching distributees the same as it would have been had there been no change in title to the property. Foster v. Lincoln (C. C.) 74 F. 382, affirmed 79 F. 170, 24 C. C. A. 470; Johnston v. Laflin, 103 U. S. 800, 26 L. Ed. 532; Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266; Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed. 844; Richmond v. Irons, supra; Collins v. Caldwell (C. C. A.) 29 F. (2d) 329; Wright v. Keene, supra. In Matteson v. Dent, 176 U. S. 521, 20 S. Ct. 419, 44 L. Ed. 571, the widow and heir of a stockholder in a national bank to whom shares had been allotted by the probate court in indivision but who let the stock stand in the name of the deceased without any notice of their title to the bank, were held liable under the statute for assessments on the stock when the bank subsequently became insolvent, in proportion to their interest in the estate. The subject of a stockholder's added liability for assessment as

affected by his death is fully covered by annotations of Austin v. Strong, supra.

The estate of the infant, Pauline, in the hands of her guardian which came from her father is therefore liable for the assessment against the two shares which stood in his name at the time the bank became insolvent, but for no more. The demurrer to the answer should have been carried back to the petition and sustained to the extent indicated.

Wherefore the judgment is reversed for consistent proceedings.