## McGehee v. Dorman et al.

(Decided March 16, 1937.)

HERSCHEL T. SMITH for appellant.
STEVE WILEY for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing in part and affirming in part.

Under the provisions of section 595, Kentucky Statutes, the banking and securities commissioner has sued the appellant, John R. McGehee, to recover $500 as his double liability on five shares of stock in the insolvent Farmers Bank of Fulton. Judgment was rendered for $250. The defendant has moved for an appeal and asks a reversal of the judgment. The commissioner has moved for a cross-appeal from that part of the judgment which denied full recovery.

On the question before the court, the petition, in summary, states that on April 3, 1905, five shares of stock in the bank were issued to the defendant's wife. She remained the owner until her death in the year 1925. The stock has continued to be registered in her name. Since her death, dividends on it were received and collected by the defendant, who has held and used the same as his own personal property. Recovery for $500 was prayed upon the ground of estoppel to deny ownership. The wife died intestate possessed only of this bank stock, and there was never any administration of her estate. It was further pleaded that if the court should hold the defendant not liable for the full sum due on the stock assessment, then since he was entitled to and became the owner of one-half the stock under the statutes of descent and distribution, section 2132, Statutes, he was liable for $250.

The answer presented a traverse qualified by affirmative allegations, the essential part of which may also be stated in abridgement. The defendant's wife left surviving as her heirs at law two sisters and the descendants of another who predeceased her. Immediately after her death, her sisters claimed the five shares of stock, and the defendant "agreed and consented that it was theirs and that they might have it." The defendant also owned eight shares of stock in the bank, and, without his suggestion or solicitation, its officers had made out checks for the dividends on thirteen shares payable to him. This included the five shares standing in his wife's name. The defendant cashed the checks and paid over that declared on the five shares to his wife's sisters and retained the balance declared on the eight shares owned by himself. He received and used no part of the dividends on the five shares and has not profited or benefited financially or otherwise in any sum by reason of his wife's ownership of the stock.

A demurrer was sustained to the answer. The defendant declined to plead further. Judgment was rendered against him for $250 with interest. This obviously was upon the ground that he was liable as a distributee of one-half of the personal property owned by his deceased wife.

As we stated upon abundant authority in Fitz-

patrick's Guardian v. First National Bank of Whitesburg's Receiver, 256 Ky. 93, 75 S. W. (2d) 754, 756:

"Though the provisional obligation for an assessment of stock is imposed by law and controlled by the terms of the statute, yet the liability is regarded as contractual in its nature. The agreement to respond contingently is implied by the purchase of the stock and is just as obligatory as the original liability to pay for it."

Since this obligation is contractual, assent or agreement is an essential element. So when it comes to transferring the stock with the attendant statutory liability for assessment, that cannot be done without the express or implied assent or agreement of the transferee. Thus it cannot be assumed by or unloaded upon an infant personally because of his contractual disability. And where there has been merely a transfer on the register without the transferee's knowledge or consent, he cannot be held to have assumed or incurred the liability, and may repudiate the transfer. Clark v. Ogilvie, 111 Ky. 181, 63 S. W. 429, 23 Ky. Law Rep. 552; Fitzpatrick's Guardian v. First National Bank of Whitesburg's Receiver, supra; Michie on Banks and Banking, Vol. 2, page 170, Secs. 132, 448; vol. 7, page 92, Sec. 109; Zollman on Banks and Banking Secs. 1622, 1721, 1731, 1734; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Mellott v. Love, 152 Miss. 860, 119 So. 913, 64 A. L. R. 968; Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 661; Austin v. Strong, 117 Tex. 263, 1 S. W. (2d) 872, 876, 3 S. W. (2d) 425, 79 A. L. R. 1528; Seabury v. Green, 294 U. S. 165, 55 S. Ct. 373, 79 L. Ed. 834, 96 A. L. R. 1463.

The transferor continues liable to the creditors of the bank until he has had the transfer put upon the books of the institution. He is the apparent owner and is estopped to deny that he is in fact what he represents himself to be. Michie, Banks & Banking, vol. 7, sec. 108, 109; Zollman, sec. 1682. To avoid confusion, we may observe, however, that there may be an exception, as where he has reasonably done everything he could to have it transferred on a good faith sale. Bracken v. Nicol, 124 Ky. 628, 99 S. W. 920, 11 L. R. A. (N. S.) 818, 14 Ann. Cas. 896, 30 Ky. Law Rep. 864. The pur-

chaser also becomes liable because he is the owner. The creditors have the right of election whom they will pursue, or they may commence the action against both, but can have satisfaction only against one. Zollman, sec. 1731. This dual liability rests not only upon the statute, but as well upon the conception that the owner cannot avoid responsibility simply by neglecting to have the transfer recorded on the books of the corporation and thereby benefit by his own wrong. It is also to circumvent possible deception of the creditors. Robinson-Pettit Company v. Sapp, 160 Ky. 445, 169 S. W. 869; Zollman, sec. 1691.

This rule is applicable where the stock descends to the heirs of a deceased stockholder of record or is bequeathed by him. Responsibility of the registered owner for the super-added liability does not terminate with his death even though his estate was settled and distributed prior to the insolvency of the bank. Zollman, sec. 1721; Michie, sec. 98, vol. 7; Fitzpatrick's Guardian v. First National Bank of Whitesburg's Receiver, supra. The heirs or legatees may be liable, either as owners who have not had the stock transferred of record or as recipients of the estate chargeable with the debts of the ancestor or bequeather.

In this case there is no attempt to fasten liability by following assets of the deceased. The petition seeks to charge the defendant not as the successor of the original stockholder, but as an unregistered tranferee. The defendant's pleading affirms that he never was, and is not presently, the owner in whole or in part, and alleges that the sisters of the stockholder claimed and received the stock. Whether this was made under a claim of previous ownership or as heirs of Mrs. McGehee does not appear. But it does not seem material, for there was no legal obstruction to the husband's making a gift of his distributable share in the stock to the sisters. It is to be borne in mind that this was six years before the bank was closed. At that time it was a solvent institution. Heirs and distributees capable of contracting may by agreement dispense with administration and agree upon division of personal property of an intestate, there being no debts. Trent v. Griffy, 193 Ky. 124, 235 S. W. 22. The defendant alleges, in effect, that the dividends were received by him merely as agent of the real owners.

Because of this factor of nonacceptance, the case is distinguishable from those cases where stock was actually distributed to an heir or devisee, either through administration or directly without such orderly procedure, and he neglected to have the transfer made of record. Of such are Matteson v. Dent, 176 U. S. 521, 20 S. Ct. 419, 44 L. Ed. 571, and Gahagen v. Whitney, 271 Ill. App. 591. See Michie, vol. 7, page. 81.

The case is brought within the line of which Austin v. Strong, supra, is typical. The relationship of stockholder, with its attendant liability, cannot be forced upon the heirs by the statute of descent and distribution. The statute only operates to vest in him such rights and title in the stock as to enable him to become a stockholder if he so desires. It cannot make a contract for him imposing burdensome personal liability which he does not desire to assume. Such is the opinion of Austin v. Strong, supra, where it is further reasoned:

"If, in the absence of any showing that appellee agreed, either expressly or impliedly, to assume the liability fixed against stockholders in state banks, she can be made personally liable and her separate property taken to satisfy such liability, then the law on this subject is truly in a deplorable state. Under such construction of the statute any person who, as the result of years of toil and effort, has acquired a competence for himself and family, may awake at any time to find the accumulations of a lifetime swept away because of the death of a remote ancestor, of whom he unfortunately happened to be the sole heir, if such ancestor owned a large amount of worthless stock in an insolvent bank. A citizen could be thus pauperized by having his individual property taken without any action whatever upon his part. It would give rise to a danger from which a prospective heir would be helpless to shield himself. He could not keep his ancestors from investing in bank stock, nor could he take any action which would prevent the inheritance statute from vesting in him the title to such stock. Neither could he relieve himself of personal responsibility after the death of the ancestor by a sale of the stock, as the statutory liability continues twelve months after sale. He would be in the unfortunate

predicament of being unable to do anything to prevent the loss of his personal estate on account of a liability he had done nothing whatever to incur.''

The facts are strikingly similar. A deceased husband was the owner of five shares of stock in a bank. He died intestate in 1924. There was no administration of his estate and no necessity therefor. He left no child or descendants of any child, and his wife, under the law, became the sole and only person to whom the community estate would go. On January 1, 1925, the bank was closed. At that time the stock was registered in the name of the deceased husband. It was sought to hold his widow liable for the added assessment. Her liability, as stated in the opinion, depended upon whether she was a stockholder in the bank within the meaning of the statute similar to ours. The widow did not regard the stock of any value at the time of her husband's death, would not have accepted it as a gift under any circumstances, and had continuously renounced any ownership of title to the stock. It was held that she was not liable for the assessment either by virtue of the inheritance laws or as an owner of one-half interest in the stock as community survivor apart from any question of inheritance.

In Bates v. Peru Savings Bank, 218 Iowa, 1320, 256 N. W. 286, the owner of fifteen shares of bank stock died intestate, leaving a widow and daughter who were entitled to his estate under the law of descent and distribution, apparently to one-third and two-thirds, respectively. Under an agreed settlement between the two, the daughter took a stated sum of money in full satisfaction of her interest in the estate, the bank stock becoming thereby the property of the widow. There was never any transfer of the stock on the books of the bank. The daughter was held not to be liable as a stockholder for the statutory assessment by reason of being an heir.

In short and in fine, in cases involving this character of pursuit of the statutory assessment, liability rests upon an acceptance of the stock as an owner. It may be established by implication. It is enough if there be a right to receive the stock, coupled with acts or conduct from which the intention of accepting it and becoming a stockholder may be reasonably inferred.

One may not accept the benefits without assuming the burdens. But without some indication of acceptance, acquiescence, or ratification, there can be no responsibility. Williams v. Vreeland, supra; Smith v. Sogn, 55 S. D. 491, 226 N. W. 729, 65 A. L. R. 754; Andrew v. Dunn, 202 Iowa, 364, 210 N. W. 425; Andrew v. First Trust & Savings Bank of Ida Grove, 219 Iowa, 1244, 260 N. W. 849; Foote v. Anderson (C. C. A.) 123 F. 659; O'Connor v. Witherby, 111 Cal. 523, 44 P. 227.

The only act on the part of the defendant in the case at bar that could be regarded as indicating an acceptance of the stock is the acceptance of dividends included in the remittance of dividends on his individual stock, but which he paid over to the sisters of his deceased wife.

In Re Bingham, 127 N. Y. 296, 27 N. E. 1055, the father was the sole heir of his son, who left shares of stock in a bank as part of his estate. Shortly afterward the father took the stock into his possession, voted it with his other stock, and received such dividends as it produced. However, the stock was never transferred on the books of the bank. It was held that the father was not personally liable for an assessment, as his control of the stock and receipt of the dividends were consistent with the fact that he was handling the stock in his capacity as administrator of his son's estate. The decision was predicated apparently on the ground that he had done nothing to assert ownership in his individual right, and therefore had not contracted or agreed to assume the liability sought to be enforced against him.

The answer, it seems to us, sufficiently pleads facts showing the defendant never became the owner of his wife's five shares in the closed bank. Therefore, we think it was error not to overrule the demurrer to it.

The motion for an appeal is sustained and the judgment reversed on original appeal and affirmed on the cross-appeal that the parties may plead further and take proof if desired.

Costs assessed against appellee.

Whole court sitting.