No. 20,683.

THE WICHITA UNION TERMINAL RAILWAY COMPANY, *Appellee*, v. THE KANSAS CITY, MEXICO & ORIENT RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. PURCHASE OF CORPORATE STOCK—*Liability for Overdue Subscription Thereon.* The pleadings held sufficient to present an issue whether a liability to pay an overdue subscription was imposed by the purchase of corporate stock, irrespective of any express agreement to do so.

2. POSSESSION OF CORPORATE STOCK—*Liability for Unpaid Subscriptions Thereon.* Where one has acquired possession of corporate stock under such circumstances that he is at liberty to reject the title, or to hold it, any act in his dealings with the company which shows an election of the latter course is sufficient to render him liable upon an unpaid subscription, although no transfer has been made on the books.

3. ASSETS OF CORPORATION—*Sale Under Decree of Federal Court—Reservations in Decree—Jurisdiction of State Court—Unpaid Subscriptions to Stock.* A reservation, in a decree for the sale of all the assets of a corporation, of jurisdiction to determine and enforce any liabilities assumed by the purchaser, does not deprive another court of jurisdiction to try out the question whether such purchaser has become liable for the unpaid subscription to corporate stock included in such assets, by having subsequently elected to be treated as the owner of such stock.

4. CONTRACT—*Letter—Offer to Settle for Unpaid Subscription to Stock.* A letter written by a committee in behalf of a railroad company to another corporation held to amount to such an offer to deliver its notes in settlement of an unpaid subscription to stock of such corporation in its possession as upon acceptance to constitute a contract.

5. SAME—*Offer to Settle for Unpaid Subscription to Stock—Not Withdrawn.* A letter from the railroad company to such corporation, signifying a purpose not to continue an arrangement which would presumably make such stock of greater value to it, held not to amount to a withdrawal of the offer, the right to vote the stock and draw dividends upon it furnishing a sufficient consideration for the contract.

6. SAME—*No Laches in Acceptance of Offer.* The delay in acting upon such an offer held not to have been so great as to prevent a contract resulting from its acceptance.

7. TRIAL—*Evidence.* Evidence objected to held to have been either admissible or nonprejudicial.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed March 10, 1917. Affirmed.

*John A. Eaton, Dudley W. Eaton, Hyden J. Eaton,* all of Kansas City, Mo., *R. L. Holmes, Charles G. Yankey,* and *W. E. Holmes,* all of Wichita, for the appellant.

*R. R. Vermilion, Earle W. Evans, Joseph G. Carey,* and *W. F. Lilleston,* all of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Wichita Union Terminal Railway Company was organized under the laws of Kansas for the purpose of acquiring and maintaining at Wichita joint-terminal facilities for four railroads, including that of the Kansas City, Mexico & Orient Railway Company. Subscriptions to its stock were made in behalf of the four companies in equal shares, and the stock was issued accordingly. On April 18, 1911, a call was made for a payment of ten per cent of the par value of the stock, to which all the holders responded. On October 27, 1911, a further assessment of $40 a share was made, amounting to $10,000 for each company, which was paid by all excepting the Orient Railway Company. A union station was built, which was used by the four companies referred to under an operating agreement by which they contributed equally to the expenses and shared equally in the revenue. These four companies united in a stock trust agreement by which they pledged the stock as collateral security to the trustee of the mortgage securing the bonds of the terminal company. On July 16, 1914, all the assets of the Orient Railway Company were sold under a decree of the federal district court to a new corporation, known as the Kansas City, Mexico & Orient Railroad Company. On October 29, 1914, a letter was written to the treasurer of the terminal company by a committee representing the Orient Railroad Company, offering to turn over some two-year gold notes of the latter company at par in payment of the overdue stock subscription. Negotiations followed which the terminal company regards as having culminated in an acceptance of the proposition. The Orient Railroad Company contends that the offer was withdrawn before its

acceptance. The terminal company brought this action against the Orient Railroad Company for $10,000, alleging that to be the value of the gold notes. A hearing was had, chiefly upon an agreed statement. The plaintiff recovered a judgment, from which the defendant appeals.

The case turns chiefly upon the effect of the negotations referred to, which were wholly in writing. On October 23, 1914, the board of directors of the Orient Railroad Company adopted a resolution which was recorded in these words:

"Thereupon a resolution was offered, and on motion, duly seconded and unanimously carried, by which the president of the company and Mr. Moore were authorized to negotiate with The Wichita Union Terminal Railway Company for settlement of the claim .of the company for unpaid balance of ten thousand dollars ($10,000) due it on subscription of The Kansas City, Mexico & Orient Railway Company, said settlement to be made in two-year six-per-cent gold notes of this company, if possible; or if. not, then in cash to be paid in installments from time to time, upon the best possible terms."

On October 29, 1914, this committee wrote to the treasurer of the terminal company, saying:

"With regard to the unpaid balance on Orient subscriptions: We would like very much to get this matter closed up and out of the way, but, as you know, our earnings are very small—barely sufficient to meet operating expenses and other charges, consequently we are unable to make the payment out of earnings. We have, however, some Two Year 6% Gold Notes, dated April 30th, 1914, and we would be pleased to turn over to your company enough of these notes at par, with indorsement of interest paid to date of settlement, to pay the face value of the claim.

"For your information will say, these notes are a part of the $6,000,000 Two Year Gold Notes issue of\ the reorganized Railroad Company and are secured by a pledge of all of the outstanding stock (except qualifying shares) and of all of the issued and outstanding bonds of the Railroad Company.

"We would be pleased to have you consider this proposition and advise."

In a reply written on November 5, 1914, the treasurer of the terminal company said:

"I do not know anything about the market value of the notes referred to, and, as the other three owning lines have paid their stock assessment in full, it hardly seems proper for me to accept anything but the cash in this case. . . . I shall be glad to submit your proposition to the various Directors at the next meeting, if it is the best offer you can make."

On November 6, 1914, the president of the Orient Railroad Company answered:

"Acknowledging receipt of your letter of the 5th instant, file C-570, have to say, the settlement proposed in my letter of the 29th ultimo is really the only one which we can make at this time, and I trust that the Directors may see their way clear to accept the same."

On January 13, 1915, the directors of the terminal company voted to accept the offer of the Orient Railroad Company to deliver the gold notes in settlement of the unpaid assessment, and notice thereof was at once given. In the meantime, however, on January 2, 1915, this letter had been sent by the Orient Railroad Company to the terminal company:

"The Kansas City, Mexico & Orient Railroad Company acquired all of the property of its predecessor, The Kansas City, Mexico & Orient Railway Company, under a decree of foreclosure in the District Court of the United States for the District of Kansas, First Division, in the suit therein pending of the United States & Mexican Trust Company et al., Complainants, vs. The Kansas City, Mexico & Orient Railway Company et al., Defendants, being Equity Consolidated Cause No. 1262. In subdivision 18 of said decree it was provided:

" 'That the purchaser shall have the option to be exercised within six months from and after the sale of adopting or repudiating any or all executory contracts of the railway company.'

"You are further advised that The Kansas City, Mexico & Orient Railway [road] Company was the purchaser under said decree and ac-acquired the said property subject to and governed by the said provision in said decree as well as each and all of the other provisions in said decree contained.

"Within the provisions of said decree and within the time therein specified The Kansas City, Mexico & Orient Railroad Company hereby gives notice of its intention to cancel, and the cancellation or repudiation of the certain operating agreement between the above-named Companies and The Kansas City, Mexico & Orient Railway Company covering the Union Station and properties of the Wichita Union Terminal Railway Company at Wichita, Kansas, as well as all other contracts undertaking promises or agreements in connection with said Union Station or the operation thereof, the said cancellation to take effect upon the service of this notice or under and pursuant to such arrangements as the parties may mutually agree upon.

"This notice is served pursuant to the action of the proper officers and authorities of The Kansas City, Mexico & Orient Railroad Company heretofore duly taken."

On December 18, 1914, a draft made upon the Orient Railroad Company by the treasurer of the terminal company for:

a part of the taxes of that year was refused payment, the refusal being based upon "negotiations for disaffirmance of contract."

1. The defendant maintains that no recovery can be had by the plaintiff unless a contract resulted from the offer and acceptance referred to, because its pleadings presented no other theory. The petition, however, alleged that all the property of the Orient Railway Company, including the stock in the terminal company, had been purchased for, and been taken possession of by the defendant. This was a sufficient allegation, when not attacked by motion, that the defendant had accepted the ownership of the stock and therefore had become chargeable with the unpaid assessment against it.

2. A transfer of corporate stock on the books of the company ordinarily is necessary to relieve the seller from liability upon his subscription and may be necessary to render the buyer chargeable therefor. (1 Cook on Corporations, 7th ed., § 258, p. 737.) But even where such transfer has not been made, if the corporation and the buyer by any unequivocal act, such as the payment and acceptance of a dividend, indicate a recognition of his having become a stockholder, the seller is released and the buyer becomes liable. (1 Cook on Corporations, 7th ed., § 258, p. 739; Note, 14 Ann. Cas. 898, 900; *Foster v. Row*, 120 Mich. 1, 16. See, also, *Robinson-Pettit Co. v. Sapp*, 160 Ky. 445; *Basting v. Northern Trust Co.*, 61 Minn. 307.) Granting that the mere taking physical possession of the stock by the Orient Railroad Company did not make it a stockholder in the terminal company, its offer to pay the overdue subscription showed an election to regard itself as the owner, and the terminal company recognized its title when it demanded payment from it. There was evidence that after entering upon the operation of the railroad the defendant received payment of the share of the revenue of the union station which by the terms of the operating agreement was to be paid to the Orient Railway Company. This was as much a recognition of that company's ownership of the stock as the payment and acceptance of a terminal company dividend would have been, if ownership of stock in that corporation is regarded as essential to a participation in the operating agreement. We think the trial court was justified in holding

the defendant liable on the theory that it was the purchaser of the stock, whether or not a contract was made to deliver the gold notes. This conclusion is strengthened if the connection between the two matters is deemed to be so intimate that stock in the terminal company would not be an object to any owner except one who had the privilege of using the union station.

3. It is argued that the state court can not determine the matter of the defendant's liability on this basis, because the federal court reserved jurisdiction of such questions. The federal court reserved jurisdiction to determine and enforce any liabilities assumed by the purchaser under the terms of the decree. But the liability of the defendant on the theory suggested is based, not on its having purchased the property of the Orient Railway Company, and thereby having become chargeable with its obligations, but upon its having chosen, after such purchase, to be regarded as the owner of the stock on which the subscription had not been paid.

4. The defendant asserts that the letter of October 23, 1914, was not an offer the acceptance of which would constitute a contract; that the resolution of October 29 did not authorize the committee to conclude a settlement, but merely to conduct negotiations subject to the final approval of the directors. We think the language of the resolution authorizing the committee to negotiate for a settlement "to be made in two-year six per cent gold notes of this Company, if possible," implied that it was empowered to make a definite offer to settle on the basis indicated. Moreover, the petition alleged that the committee "duly authorized to act for the defendant" made the proposition referred to, which was a definite offer to deliver the gold notes in payment of the claim, and the allegation of authority, not having been denied under oath, must be taken to be true.

5. We do not regard the letter of January 2 as amounting to a withdrawal of the offer to pay the assessment with gold notes. It does not in terms refer to that matter, but states that the Orient Railroad Company cancels and repudiates the operating agreement, "as well as all other contracts undertaking promises or agreements in connection with said Union Station or the operation thereof." The reference in the quoted

clause is clearly to contracts made by the Orient Railway Company, such as the stock trust agreement. These the letter undertakes to cancel and repudiate under the authority of the portion of the decree which it correctly quotes, but it does not purport to withdraw the offer which the Orient Railroad Company had made to deliver its gold notes in payment of the stock subscription. In behalf of the defendant it is argued that its decision to end its connection with the union station and the contracts relating thereto practically destroyed the subject matter of its offer made to the terminal company. In order to avail itself of the provision of the decree allowing the purchaser of the property of the Orient Railway Company six months within which to adopt or repudiate its existing executory contracts, it would seem that the new company was required to elect once for all which it would do; that when it accepted an advantage under such a contract, or in any way asserted successorship to the rights of the old company with respect thereto, it committed itself finally to the adoption of the contract, and could not thereafter repudiate the corresponding obligations; that in accepting a part of the revenue of the union station it had adopted the operating agreement; and that in offering to turn over its gold notes in payment of the subscription it had definitely elected to retain the ownership of the stock, and to assume the burdens incidental thereto. But in any event, the offer to pay the assessment was not necessarily bound up with the contracts relating to the station. The right to use the station may have been one of the principal advantages of the ownership of the stock, but with that element eliminated there was no want of consideration for the payment of the subscription. The right to vote the stock and the right to receive dividends were sufficient to constitute a legal consideration, and these rights could only be acquired by the payment of the assessment.

6. A further argument is made that if the letter of October 29 was an offer to enter into a contract, it was not accepted within a reasonable time. The treasurer of the terminal company in replying to the letter said that the proposition would be laid before the directors at their next meeting. No objection was made to this arrangement. In fact, the letter of November 6 indicated a willingness to await the action of the

directors. There is nothing to suggest that the directors' meeting of January 13 was not the first that was held after the receipt of the proposal. We do not regard the delay as unreasonable.

7. Objection is made to the admission of the evidence that the defendant had accepted a share of the revenue of the union station. If the question whether the defendant had effectually repudiated the operating agreement was involved this evidence was relevant to that issue. Otherwise it was not prejudicial.

The judgment is affirmed.