L. A. ANDREW, State Superintendent of Banking, Appellee, v. STATE BANK OF SWEA CITY et al., Appellants.

No. 40235.

March 18, 1930.

*E. G. Dunn* and *B. R. Dunn,* for appellants.

*T. P. Harrington,* for appellee.

De Graff, J.—The State Bank of Swea City, Iowa, was engaged in the banking business at Swea City, and had operated for several years prior to November 26, 1926, on which date, pursuant to a resolution of its board of directors, the bank temporarily closed its doors. This was done in order to work out a plan whereby its creditors and depositors could rehabilitate the bank and make good its impaired capital.

It appears that, on the 2d day of December, 1926, it was voted by the board of directors to place the bank in the hands of the state banking department for liquidation. It also appears that the depositors of the bank, prior to the meeting of December 2d, formed a depositors' committee, whose function it was to take steps to place the bank in such financial condition

that it could again open its doors and avoid receivership proceedings. A stipulation was filed at the time of the instant trial, wherein it is recited, *inter alia,* that, subsequent to December 2, 1926, and prior to December 22, 1926, the depositors of said bank, for the purpose of preventing the final closing of the bank, proceeded with a volunteer organization among the depositors, for the purpose of devising ways and means by which said bank would be reopened and reorganized as a going concern; that, as a result of said voluntary organization, the depositors appointed a committee from among the depositors; and that said committee went to Algona, and met with a portion of the directors of said bank, to wit, Sullivan, McMahon, and Linnan; that, after the meeting, another committee from the depositors' organization was appointed, for the purpose of visiting Des Moines, to interview the superintendent of banking, to induce him to permit the reorganization and reopening of the temporarily closed bank; that the position taken by the superintendent of banking in this matter is shown, substantially, by a written memorandum on that date, addressed to the State Bank of Swea City, wherein it is recited that the depositors were particularly interested in a plan of reorganization of the bank, and that other depositors, including themselves, are of the opinion that 50 per cent of the deposits subject to waiver can be obtained, and that a waiver of time may be obtained on the other 50 per cent of the deposits that are subject to waiver, and that, with these deposits waived in the amount of 50 per cent, and approximately a 100 per cent assessment on the stock, to be paid voluntarily, which will include the resale of 94 shares of stock at par, there would be sufficient to give them an operating reserve, and make it a solvent bank. It is further recited in said memorandum, as a matter of history, that the bank closed on November 26, 1926, simultaneously with other banks in and around Algona, and was unable to open at the time the other banks opened, because of lack of reserve. The stipulation further recites that it was agreed that these depositors should have until December 20, 1926, to work out plans for a reorganization of the bank, and that these plans were to include the waiving by depositors of 50 per cent of their deposits (which would be supported only by certain rejected assets, under a trust agreement), it being understood that public accounts and other unwaivable assets

are not included, and that the other 50 per cent of the deposits not waived as to amount were to be waived as to maturity, extending the time of payment to such time as should be agreed upon between the bank and the depositors, and that the 100 per cent assessment on the stock which was to be paid voluntarily should be in cash, as it formed the only apparent source of reserve; that it was also understood that the future management of this bank, if reorganized, should be approved by the banking department.

It is apparent that the banking department did co-operate with the depositors' committee, and did outline a plan whereby the bank would be saved from having its doors permanently closed. A subsequent meeting was held by the depositors in Swea City, December 10, 1927, and an organization was effected among the depositors to carry out the plan of reorganization. At this time, 107 shares of the capital stock of the bank were surrendered by the owners (not financially able to meet an assessment), for the purpose of resale by the depositors' committee, and the depositors proceeded to take steps to sell this stock. Joseph M. Dye, one of the defendant stockholders herein, was appointed chairman of the depositors' committee, and all money received from the sale of the stock was deposited with Dye, and was to remain in his custody until the stock-selling campaign was consummated. The owners of the balance of the stock, approximately $15,000 in amount, voluntarily paid a 100 per cent assessment, which funds, together with the proceeds of the sale of the stock made through the depositors' committee, were eventually turned over to the bank.

The committee did succeed in obtaining waivers to approximately 50 per cent of all the deposits, and also secured waivers as to the maturity of the remaining 50 per cent, other than public funds and other non-waivable deposits. When all these matters were accomplished, and the managing officers were selected and installed, in accordance with the requirements of the state banking department, the directors of the bank, on December 22, 1926, voted to reopen the bank, and it continued to do business as a going concern until October 20, 1927, when the bank was closed by the action of its board of directors, and the superintendent of banking, under statutory authority, took charge of said bank, as its receiver. Such are the primary facts

constituting the history of the life struggle of the State Bank of Swea City until the crepe was placed on its door, indicating its official death.

On December 9, 1927, the petition in the instant case was filed by the plaintiff receiver, to collect the 100 per cent statutory liability as against the stockholders of record on the books of the insolvent bank, under the provisions of Section 9251, Code, 1927. It is apparent from the record that the only compulsory assessment against the defendant stockholders is the assessment involved in this case. What was done by the depositors' committee in attempting to work out the salvation of the State Bank of Swea City, and whatever was accomplished by this committee, must be viewed on the part of both the committee and the payers of money as voluntary. It was done to restore the impaired capital of this bank, in order that it might lawfully conduct further banking operations. The statute governing impaired capital and the statute governing the 100 per cent liability of stockholders are in different categories, have a different purpose, and contemplate a different scheme of things. See *Andrew v. Farmers Tr. & Sav. Bank*, 204 Iowa 243; *Andrew .v. Commercial State Bank*, 206 Iowa 1070. These answering defendants purchased the stock in question from the soliciting committees appointed by the depositors. This stock was paid for in full by the purchasers, and certificates of stock were issued to them. Their respective contracts of purchase were fully executed, and consequently, these purchasers became full-fledged stockholders of the bank. The purpose of the depositors and their committees is plain. By the reorganization which they eventually effectuated, they hoped to save the bank from liquidation, not only protecting themselves, as depositors, but providing for the saving of the bank, for the business interests of that community. The record discloses no fraud, either actual or constructive. No attempt at rescission was made by these answering defendants, prior to the taking possession of the bank by the receiver. It is a well settled rule that a person, upon the acquisition of capital stock, incurs such obligations as the law imposes by virtue of his contractual relationship. The obligation in the instant case is that the stockholders pay for the benefit of the creditors of the bank an amount sufficient to pay the debts of the corporation which the assets of the bank will not pay, up

1158

to an amount equal to the amount of the stock held by each stockholder. There was ample consideration for the stock-purchase contracts which were the basis for the issuance of stock. They were all acting in concert of action with other parties to restore the impaired capital of the bank. $15,000 worth of stock paid a 100 per cent assessment, or $15,000 in cash went into the funds of the bank on reliance upon the purchase of stock by these answering defendants; and, as between these stock purchasers, it must be said that there was mutuality in the respective stock purchases, as all understood the plan to save the bank. It may also be observed that, through the consummation of the plan, the bank did open its temporarily closed doors, with the approval of the banking department, and thereafter received deposits, and continued in the ordinary course of banking business for about eleven months. These matters were all known to the answering defendants; and, as stated, no effort was taken to rescind, and no tender back of the certificates of stock was made to the party from whom same were purchased, or to the bank. In fact, nothing was done until the bank was placed in the hands of a receiver, and the instant petition was filed. In the light of the record facts, the plea of waiver and estoppel by the receiver in his reply to the answer of these resisting stockholders must be viewed as a good and sufficient plea. The facts and the law applicable thereto classify these answering defendants as stockholders, with the statutory liability thereunto pertaining.

The trial court correctly ruled the case, and the decree entered must be, and is,—*Affirmed.*

Stevens, Faville, Albert, and Wagner, JJ., concur.