Thomas Gahagan et al., Appellees, v. Cora Whitney, Appellant.

Gen. No. 8,678.

Opinion filed September 20, 1933.

JACOB CANTLIN and SAMUEL RUBIN, for appellant.

JOHN M. STAGER, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellees, as creditors of the Tampico State Bank, brought this suit on behalf of themselves and all other creditors similarly situated to enforce a stock liability against appellant Cora Whitney and others.

It appears from the evidence that the Tampico State Bank was organized in 1918 and operated from that time until the 18th day of March, 1932, when its affairs were turned over by its board of directors to the auditor of public accounts to be liquidated. Fred A. Brewer owned 25 shares of stock in this bank and died intestate on July 15, 1923, leaving as his only heir at law his widow Cora Brewer, now Cora Whitney, who was duly appointed administratrix of his estate and continued to act as such until January 3, 1930, when her final report was approved and she was discharged and the estate closed.

As administratrix, appellant inventoried this stock, but no further mention thereof is made in any of the estate proceedings. Shortly after the death of her husband, appellant received from the bank a certificate evidencing the fact that her husband owned 10 shares of stock in this bank, and she receipted the bank therefor, signing her name to the stock register book. This certificate is dated June 27, 1923, but was not delivered to Fred A. Brewer in his lifetime. The two other certificates evidencing the ownership of 15 additional shares had been delivered to Mr. Brewer, and from the time the several certificates were issued, the stock has always stood in the name of Fred A. Brewer on the books of the bank. During the course of adminis-

tration, certain inventoried items of personal property were sold, but not the bank stock. The final report discloses that all the debts and claims against the estate were paid, the administratrix charging herself with having received $7,307.04, out of which she paid $2,649.32, leaving a balance in money of $4,657.72, which she retained as sole heir of the deceased. During the year 1928 and while the estate was being administered, the board of directors of the bank authorized the payment of two dividends of five per cent each to the stockholders, and dividend checks were issued, aggregating $250, payable to appellant individually, who received the money represented by these checks.

From a decree finding that appellant was a stockholder at the time the bank closed and ordering the payment by her of $2,500 in order to discharge such liability the record is brought to this court for review by appeal.

Appellant insists that a liability as a stockholder cannot be imposed upon her simply because she was the sole heir of her husband, that there was no acceptance of this stock by her in her individual capacity, either while she was acting as administratrix or since her discharge, that the dividends she received were received by her while she was acting as administratrix of the estate of her deceased husband, and as her name does not appear on the books of the bank as a stockholder, she never was in fact a stockholder in this bank.

In *In re Bingham*, 127 N. Y. 296, 27 N. E. 1055, relied upon by appellant, it was sought to hold the estate of the deceased for a stock assessment upon certain shares of bank stock which stood on the books of the bank in the name of the son of the deceased, who was the owner thereof at the time of his, the son's, death, he having predeceased his father, and the father being the sole heir and next of kin and administrator of his son's estate. It appeared in that case that the

father, after the death of his son, voted the stock and received dividends thereon, but at the time of the death of the father, he, the father, had not completed the administration of his son's estate, and the court held that the father's control of the stock and the receipt of dividends thereon was consistent with the fact that he was administrator of the estate of his son and that while he may have paid such claims against his son's estate as were undisputed, he never had made any judicial settlement of his accounts as administrator and that the only interest he could have had in the stock was a residuary interest after the payment of the debts of his intestate and that until he was discharged as administrator, he held title to the stock only in his representative capacity.

Upon the death of her husband, appellant became the owner of his property, subject only to the payment of his debts. Her final report, filed and approved more than two years prior to the time the bank closed, shows not only that all of his debts were paid, but that she actually received in cash the sum of $4,657.72. While acting as administratrix, she either received the dividends declared and paid by the bank upon this stock in her individual capacity, or as administratrix of the estate of her husband. If she received them as administratrix, she should have charged herself therewith in her final report, but she did not do so. Had she done so, the only effect would have been to augment by $250 the amount her final report discloses she received after the payment of all the debts and claims against her deceased husband's estate. It may be unimportant, therefore, under the circumstances as shown by this record, that the dividend checks were made payable to her order individually, and that she indorsed them in her individual capacity and treated them as her individual property and not as property of the estate. If, however, prior to her discharge as administratrix she may be said to have held this stock

in her representative capacity, still her representative capacity ceased upon her discharge as administratrix. Her final report made no mention of these certificates of stock, but she continued to retain possession of them and took no affirmative action to disclaim her title during the 26 months which elapsed after her discharge as administratrix and before the bank closed. There were ways open to appellant by the exercise of which she could have avoided being treated as a stockholder in this proceeding. *Rosenfeld v. Horwich,* 221 Ill. App. 304. Appellant, however, did nothing, but permitted the books of the bank and also the public records of the county to remain as they were at the time of her husband's death, and had the public records of the probate court been examined, they would have disclosed that she administered the estate, inventoried this stock, that it had not been sold, but all the debts and claims against the estate had long since been paid, and her final report, showing the receipt by her of a substantial sum, had long since been filed and approved, and she had been discharged as representative of his estate.

Of course the liability of a stockholder in a state bank may not be imposed upon anyone without either the express or implied consent of such person, nor can individual property be taken from heirs to satisfy a stock liability upon stock which they do not in fact own. "One to whom stock in an insolvent corporation is bequeathed is not liable for debts of the corporation where the stock was not transferred on the books and where no acceptance by him of the bequest is shown. But where a legatee on distribution of the estate accepts corporate stock, he will be considered the owner from the death of the testator and as such liable for debts contracted after the testator's death and before distribution." 14 C. J. 1015. While no formal order was entered in the probate court distributing this

stock in kind to appellant, her conduct precludes her from denying an acceptance thereof.

It is not essential to the liability of a stockholder in an insolvent banking corporation for an assessment on his stock for the benefit of creditors thereof that the stock stand on the corporate books in the name of the stockholder assessed. *Doster v. Mobley,* 38 Ga. App. 508, 144 S. E. 385; and where a widow and heirs are allotted shares of stock in proportion to their interest in an estate, and they permit the stock to stand in the name of the deceased without any notice of their title to it, they are liable to assessments on the stock in case the bank subsequently becomes insolvent. *Matteson v. Dent,* 176 U. S. 521. See also *Luce v. Thompson,* 36 F. (2d) 183.

Counsel for appellant further insist that appellees as creditors of the bank, having failed to file their claim against the estate of Fred A. Brewer, are barred from seeking a recovery against appellant and rely upon *Sanders v. Merchants State Bank of Centralia,* 349 Ill. 547. In that case it appeared that Robert Barron was the owner of 40 shares of stock in the defunct bank. Nearly six years before the bank failed he transferred those shares and two years later died, leaving a will, by which he gave all his property to Martha Barron, his widow. His estate was finally settled and the executrix discharged over two years before the failure of the bank. The court held a failure by the creditors of the defunct bank to present a claim against Robert Barron's estate within one year was a bar to a recovery in any other proceeding against the widow. There is nothing said in the opinion in that case in conflict with our holding here.

In this proceeding, under the facts as they appear in this record, appellant must be treated as a stockholder of this bank, and the chancellor properly decreed that she was liable in this proceeding. The decree appealed from is affirmed.

*Decree affirmed.*