L. A. ANDREW, Superintendent of Banking, Appellee, v. FIRST TRUST & SAVINGS BANK of Ida Grove and MRS. S. SIMON et al., Appellants.

No. 42762.

MAY 14, 1935.

Charles S. Macomber, for appellants.

Snell Bros., for appellee.

POWERS, J.—S. Simon died testate on the 25th day of June, 1924. He was the owner at the time of his death of twenty shares of stock in the First Trust & Savings Bank of Ida Grove, Iowa, and the stock stood in his name on the books of the bank. His will gave · his entire estate to his widow "during her lifetime or until such a time as she may remarry * * * to have and to hold the same for her full use and benefit". The will further provided that, in the event she remarried, she was to have two-thirds of the estate remaining at that time and the balance of the estate then remaining was to be distributed equally among his three children and, in the event she did not remarry, then the amount remaining at her death was to be distributed equally among his three children. The widow, Helen Simon, was appointed executrix of the estate, and in due course published notice to creditors to file claims, and on November 14, 1925, by proper order of court, her final report was approved and she was discharged as executrix. She took possession of all the property in the estate, including the certificate covering the twenty shares of stock in the First Trust & Savings Bank of Ida Grove,

and thereafter received three or four dividend payments on such shares. The shares were never, however, transferred upon the books of the bank and remained in the name of S. Simon and were in his name on the books of the bank at the time the bank closed in October, 1930, long after the estate had been closed.

After the closing of the bank, this proceeding was brought in equity by the receiver of the bank for an assessment upon the twenty shares of bank stock. There is no question involved as to the right of the plaintiff to maintain an action to collect an assessment from the stockholders of the First Trust & Savings Bank of Ida Grove, nor of the necessity for such assessment. Three specific questions are presented by plaintiff's claim as made in his petition and amendments: First, may judgment properly be entered against the children of deceased for an assessment on the stock; second, may judgment properly be entered against the widow for such assessment; third, may the property which the executrix of the estate turned over to the widow and now in her possession be subjected to a claim for the payment of the assessment? The trial court entered judgment against the children for the amount of the 100 per cent assessment on the stock, or $2,000. This judgment was entered on the theory that the children, under the terms of the will, were the owners of the stock. We give our attention first to the correctness of that holding.

I. The obligation of a member of a corporation to pay the superadded liability on corporation stock is quite generally held to be contractual. Whitman v. Nat. Bank of Oxford, 176 U. S. 559, 20 S. Ct. 477, 44 L. Ed. 587; 7 C. J. 501; Gahagan v. Whitney, 271 Ill. App. 591; Andrew v. State Bank of Swea City, 209 Iowa 1153, 229 N. W. 905. The stockholder, in consenting to become a member of the corporation, enters into a contract of which the constitutional or statutory provision providing for assessment on the stock in the event of the insolvency of the company is an implied provision. It follows that one cannot be held on such a liability without having consented to such a contract by consenting to become a stockholder or member of the corporation. Where one subscribes for stock in a corporation or obtains the transfer on the books of the company of stock in a corporation to his own name, there is no difficulty in finding the necessary consent. Michie, Banks and Banking, vol. 2, p. 113. But, if the stock is transferred to a person without his knowledge or consent, he does not assume the

obligation. Foote v. Anderson (C. C. A.) 123 F. 659; O'Connor v. Witherby, 111 Cal. 523, 44 P. 227; Smith v. Sogn, 55 S. D. 491, 226 N. W. 729, 65 A. L. R. 754. Likewise, statutes of descent and distribution, as well as testamentary provisions, are ineffective to create the obligation unless the person in whose benefit they operate consents to accept the stock and become the owner thereof. Austin v. Strong, 117 Tex. 263, 271, 1 S. W. (2d) 872, 875, 3 S. W. (2d) 425, 79 A. L. R. 1528. See, also, Bates v. Peru Savings Bank, 218 Iowa 1320, 256 N. W. 286, 289; Andrew v. Dunn, 202 Iowa 364, 210 N. W. 425. It is not necessary that the stock be actually transferred on the books of the banking corporation to impose the liability. Bates v. Peru Savings Bank, supra. It is enough if there be a right to receive the stock coupled with acts or conduct from which the intention of accepting it and becoming a stockholder may properly be inferred.

In the case at bar, the defendants, Edna Goodman, Hazel Oppenheimer, and Violet Jacobson, who are the children of the deceased owner of the stock, did nothing to indicate even the slightest intention to become stockholders in the First Trust & Savings Bank of Ida Grove. It is true that under the will of S. Simon, the widow, generally speaking, was given a life estate in his property, and that the remainder interest in the property went to the children. Both parties to this controversy seem to agree, however, that the widow had, in addition to the right to use the income from the estate during her lifetime, a right to use so much of the principal as was necessary for her support. The will provided that what was to go to the children was that which was "remaining" at the time of the widow's death. The stock, therefore, was never offered to these children. It might never be offered to them. It might be exhausted and used up long before the estate passed to them. They were never called upon to determine the question as to whether they wanted to become members of the corporation or not. No act of theirs, even in the slightest degree, tended to indicate a consent to become stockholders in the banking corporation. Under such circumstances, we are satisfied that there was no basis for the enforcement of any contractual obligation against them and no basis for the entry of a judgment for an assessment upon the stock in the banking corporation.

II. The second question which arises is whether the receiver was entitled to judgment against the widow as the owner of

the stock. She had possession of the certificate evidencing the stock and she received some dividend payments on the shares, but neither of those acts was inconsistent with her holding the stock under the terms of the will. The will purported to give her only a beneficial interest in the stock, a right to the income from it, and possibly, in addition the right to sell it to obtain funds for her support. It seems to us that the rights thus vested in her under the will were very much short of absolute ownership of the stock; and that her act in accepting the possession of the stock certificate, under such circumstances, could not properly be said to evidence an intent on her part to become a stockholder in the banking corporation subject to all the liabilities that that relationship implied. She held the certificate covering these shares of stock just as she held the other property coming to her from the estate. Her holding was in the nature of a trust. She did nothing to isolate this property and make it her own. Since the obligation of the widow to pay the assessment on the stock is a contractual obligation on which she is not to be held unless by voluntary act indicating a purpose to become a member of the corporation she assumed that obligation, and since there is no act of hers indicating such a purpose, it is our conclusion that she cannot be subjected to an assessment on the twenty shares of stock. See Austin v. Strong, supra.

We are not unmindful of the fact that a widow has been held to be an owner under a very similar will. Blackmore v. Woodward (C. C. A.) 71 F. 321. But in that case she had the stock transferred to her own name on the books of the banking corporation while it was a going and apparently solvent concern. This act would lead creditors of the bank to rely on her being a stockholder, and, in addition, it indicated a purpose on her part to take such stock as her own. There is no equivalent act indicating such a purpose in the case at bar.

III. The final question which arises is whether the assets of the estate of S. Simon, who was the owner of these shares of stock at the time of his death, can be subjected to the payment of this claim. These assets are now all in the possession of the widow. The estate has been closed. It was closed long before the bank suspended business and went into liquidation. It was properly administered following the decedent's death in 1924, and the five years provided by statute for administration of estates have passed.

Can the claim now be asserted against the assets of the estate in the possession of the widow?

This court has definitely held that a claim for an assessment on bank stock in a national bank against the administrator of the estate of the deceased owner may be maintained, although no claim was filed for such assessment during the year provided by statute for filing claims against the estate of a deceased person, where the right to the assessment did not arise until after decedent's death. Wickham v. Hull, 102 Iowa 469, 71 N. W. 352. This holding was not based upon the provisions of the federal statute making administrators and executors of the estates of deceased stockholders liable for the assessment, but was based upon the proposition that the statute requiring the filing of claims within a specified time had application only to claims existing at the time of the decedent's death, and did not apply to a claim for an assessment on bank stock where the necessity for such assessment arose after his death. It is possible that this reasoning has lost some of its force since this court has held that an obligation for the payment of an assessment on bank stock arises when the stock is acquired. Smith v. Andrew, 209 Iowa 99, 227 N. W. 587. But there is an additional and perhaps a sounder reason on which the rule rests, and that is, that the statute imposing the limitation of time for filing claims contemplates a claimant capable of asserting the claim. Baird v. McMillan, 53 N. D. 257, 205 N. W. 682, 41 A. L. R. 177.

But, whatever the reason for the rule, it now seems to be well settled in this state, as in most states, that claims of that character may be enforced against the estate of a deceased person, even though the time for filing claims has expired and the estate closed and the assets of the estate have passed into the possession of the heirs or distributees.

In Luce v. Thompson (C. C. A.) 36 F. (2d) 183, a case arising in the federal court for the Northern District of Iowa, it was held that an assessment on stock in a national bank could be enforced against the estate of the deceased stockholder after the estate had passed from the personal representatives into the hands of the heirs and distributees.

In the case of Security Fire Ins. Co. v. Hansen, 104 Iowa 264, 73 N. W. 596, it was held that, where a surety on a bond was deceased at the time liability accrued, the claim could be enforced against his estate in the possession of his heirs and that the claim

1250

was not barred by the failure to file the claim with the administrator during the time the estate was being administered.

In McClure v. Dee, 115 Iowa 546, 88 N. W. 1093, 91 Am. St. Rep. 181, it was held that the estate of a grantor in a deed containing a covenant of warranty was liable for a breach which occurred after the grantor's death, and that the claim could be enforced against the estate of the grantor in the possession of the heirs and distributees, and that the claim was not barred by a failure to file the same with the administrator while the estate was being administered.

These same principles have quite uniformly been applied to actions for the statutory superadded liability on corporate stock. See cases collected in the following notes: L. R. A. 1916A, 1185; 79 A. L. R. 1537; 26 Ann. Cas. 384; 41 A. L. R. 180.

█ In the case at bar this bank stock still belonged to the estate. It would remain property of the estate until such time as there was a transfer thereof which would vest title in some other owner. While it remained property of the estate, the estate only was liable for an assessment thereon. The cause of action for the assessment survived the death of the owner and was not discharged by the probate of the estate. It would not be discharged until title to the stock became vested in a new owner who had expressly or impliedly consented to such ownership. Until such time the property of the estate in the hands of the distributees remains burdened with the obligation of paying this assessment; and such property may in equity be subjected to the payment of the assessment, subject, of course, to any claim which the widow might have to said property, or any part thereof, superior to that of creditors of the estate.

It follows that this cause must be reversed and remanded for the entry of a decree in conformity with this opinion.—Reversed and remanded.

All Justices concur.