SCHUTZ v. READ.

1. BANKS AND BANKING—STATUTORY LIABILITY—STOCKHOLDERS—
REPRESENTATIVES OF ESTATES.

Statute defining liability of stockholders in banks distinguishes
between the liability of stockholders and those who hold the
stock in a representative capacity, the former's liability being
individual, equal and ratable while the latter's liability is
limited only to the assets of the estate of such stockholder
in his hands (3 Comp. Laws 1929, § 11945).

2. SAME—STATUTORY LIABILITY—HEIRS OF DECEASED STOCKHOLDER.

Statute imposing double liability on holders of bank stock and
distinguishing between the liability of stockholders and those
holding in a representative capacity *held*, not to warrant,
either expressly or by implication, that heirs of a deceased
bank stockholder would not be subject to an assessment lia-
bility in proportion to the assets which they receive from such
estate if in equity or by law they would be so liable (3 Comp.
Laws 1929, § 11945).

3. ESTATES OF DECEDENTS—CLAIMS AGAINST ESTATES—ACCRUAL.

Statutory provisions relative to delayed or tardy claims against
estates, not previously accrued, and barring action on suit
in law or equity by creditors against the heirs, unless pre-
sented within a prescribed time, pertain to estates still open
for the filing and presentation of claims and are inapplicable
to claims which did not accrue so that they could be filed
before the estate was closed (3 Comp. Laws 1929, §§ 15712,
15713, 15716).

4. SAME—CLAIMS AGAINST DECEDENT.

The statutes requiring publication of notice to creditors and
the filing of claims within a given time thereafter apply only
to claims which are collectible from the estate by virtue of
having been claims against the decedent in his lifetime, and
do not apply to a claim for stockholder's liability arising
against the estate as such by virtue of stock ownership (3
Comp. Laws 1929, § 15764 *et seq.*).

5. SAME—CLAIMS AGAINST ASSETS OF ESTATE—STATUTES.

    The probate statutes relating to the filing, allowance and establishment of claims against estates and the period of time within which suit should be brought against heirs receiving assets from such estates are insufficient and inadequate with reference to claims against the estate which did not accrue or become absolute before the limit of time during which the probate court is given power to afford a remedy and are inapplicable to claims arising out of stock assessments ordered by State banking commissioner after estate of deceased bank stockholder had been closed (3 Comp. Laws 1929, §§ 15712, 15713, 15716).

6. SAME—PROBATE COURTS—EQUITY—JURISDICTION.

    The probate court has exclusive jurisdiction of the administration and settlement of the estates of deceased persons, except where its remedies are inadequate or the interposition of equity is necessary for some auxiliary purpose.

7. SAME—LEGATEES—CREDITORS.

    Legatees are always compellable to refund in favor of creditors because the latter have a priority of right to satisfaction out of the assets of the estate.

8. EQUITY—JURISDICTION—FRAUD—INADEQUACY OF OTHER REMEDIES.

    Jurisdiction of court of equity to proceed against the assets in the estate of one deceased is not limited to case founded on fraud but is also assumed because of the insufficiency and inadequacy of other remedies.

9. BANKS AND BANKING—ESTATES OF DECEASED STOCKHOLDERS—STATUTORY LIABILITY FOR ASSESSMENT.

    Claim for assessment on stock of bank, closed after death of stockholder, is enforceable against assets of his estate, even though time for filing claims has expired and estate has been closed and assets have passed into possession of heirs or distributees, especially when latter are found to have been apprehensive of impending assessment before estate was closed (3 Comp. Laws 1929, §§ 11945, 15712, 15713, 15716).

10. EQUITY—JURISDICTION—PROBATE COURTS.

    Courts of chancery are not excluded from taking jurisdiction in proper cases by virtue of statutes relating to probate procedure; but on the contrary their jurisdiction is expressly preserved (3 Comp. Laws 1929, § 15519).

Appeal from Kalamazoo; Weimer (George V.), J. Submitted April 15, 1938. (Docket No. 4, Calendar No. 39,673.) Decided June 6, 1938.

Bill by Charles H. Schutz, receiver of Kalamazoo Bancshares, Inc., a Michigan corporation, against Ruby C. Read and others, heirs of Edward G. Read, deceased, to recover an aliquot part of the stock assessment levied against Kalamazoo Bancshares, Inc., to restrain sale of assets received from estate of Edward G. Read, deceased, and for other relief. Decree for plaintiff. Defendants appeal. Affirmed.

*Joseph S. Folz* and *Lucien F. Sweet,* for plaintiff.

*Stearns, Kleinstuck & Stapleton,* for defendant.

McALLISTER, J. On January 18, 1930, Edward G. Read, of Kalamazoo, signed an agreement for the purpose of carrying out the formation of a corporation designated as Kalamazoo Bancshares, Inc., with the object of acquiring the outstanding shares of the capital stock of the Kalamazoo National Bank & Trust Company, the Kalamazoo Trust & Savings Bank and the Kalamazoo Company. Among the provisions of the said agreement was the stipulation that the common stock issued by Kalamazoo Bancshares, Inc., should be subject to the same liability as shares of the capital stock of a bank and/or trust company organized in Michigan, and/or shares of the capital stock of a national bank. The corporation was organized and, by reason of an exchange of stock, Mr. Read became the owner of 3,660 shares of the stock in Kalamazoo Bancshares, Inc.

Edward G. Read died May 4, 1932, and on February 25, 1933, petition was filed praying for adminis-

tration of the estate and his son, Edward G. Read, Jr., was duly appointed administrator March 27, 1933. The appraisers appointed in probate appraised the value of the real estate in the amount of $17,800 and the personal property in the amount of $43,062.50.

On December 29, 1933, after petition by the administrator praying for settlement of his final account, the probate court for the county of Kalamazoo allowed the final account, made determination of heirs, entered order of distribution, discharged the administrator, and closed the estate. According to the determination of heirs and order of distribution, Ruby C. Read, the widow, received one-third of the said estate, and each of the children of deceased, Edward G. Read, Jr., Sherman Read, and Caroline Read, received two-ninths of the estate. All heirs receipted for their proportionate share and the estate was closed.

Among the assets of the estate were the 3,660 shares of Kalamazoo Bancshares, Inc., which were inventoried as being of no value. Each of the distributees refused to accept or have any interest in these shares and each signed a statement that he expressly refused to accept or have any interest in the stock of Kalamazoo Bancshares, Inc.

On February 14, 1933, the Bank of Kalamazoo was closed by proclamation of the governor, and on March 31, 1933, a conservator of the said bank was appointed. On December 19, 1933, Kalamazoo Bancshares, Inc., amended its articles limiting its corporate existence to December 28, 1933. On February 23, 1934, the State banking commissioner ordered an assessment of 100 per cent. against the stockholders of the Bank of Kalamazoo; and on August 10, 1934, a receiver was appointed for the

said bank. The receiver of the bank then filed a bill in equity against Kalamazoo Bancshares, Inc.; whereupon a receiver was also appointed for the said defendant, and on the hearing of the equity suit, Kalamazoo Bancshares, Inc., as a stockholder in the bank, was adjudicated liable to the receiver of the Bank of Kalamazoo in the amount of $472,800; and the receiver of Kalamazoo Bancshares, Inc., was directed by said decree to collect from stockholders of the Kalamazoo Bancshares, Inc., the sum of $3.876 per share.

In compliance with such decree, plaintiff herein, receiver of Kalamazoo Bancshares, Inc., filed a bill in chancery in the circuit court for the county of Kalamazoo against Ruby C. Read, Sherman Read, Edward G. Read, Jr., and Caroline Read Barton for recovery of $14,186.16 on the theory that they were liable as heirs of the said Edward G. Read by reason of the fact that the said deceased would have been liable in this amount because of his ownership of the said shares of stock; and that because the said defendants were distributees of his estate they were liable for such assessment.

The trial chancellor found that the defendants received assets of the estate of Edward G. Read, deceased, equal to the proportionate share of the stock assessments made against them because of the ownership of said stock by Edward G. Read, deceased; that the defendants were apprehensive of an impending assessment on the bank stock prior to the closing of the estate and for this reason refused to accept the stock in Kalamazoo Bancshares, Inc., from the estate, and accordingly a decree was entered holding defendants liable in the amount of the assessments against the stock standing in the name of deceased and at the same time giving plaintiff, re-

ceiver, a lien on the assets which defendants had received from the said estate as distributees.

Defendants appeal claiming that since the stock assessment liability did not arise until more than a year after the estate of the decedent was entirely closed and distributed, and because defendants expressly refused to accept such stock, there is no liability on their part.

In their contention, defendants rely upon the terms of 3 Comp. Laws 1929, § 11945 (Stat. Ann. § 23.52), which provide:

"The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, to satisfy the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock; but persons holding stock as executors, administrators, guardians or trustees, and persons holding stock as collateral security, shall not be personally liable as stockholders, but the assets and funds in their hands constituting the trust shall be liable to the same extent as the testator, intestate, ward or person interested in such trust funds would be, if living or competent to act; and the person pledging such stock shall be deemed the stockholder and liable under this section."

It is the contention of defendants that the above statute does not seek to impose individual liability upon the heirs of the deceased, and that, therefore, there is no liability upon them. But the statute says nothing about heirs or distributees. It provides for the liability of stockholders in banks; and it distinguishes between the liability of stockholders and those who hold the stock in a representative capacity. It defines the liability of the stockholder in banks to be individual, equal and ratable; while the

liability of one who holds stock in a representative capacity is not such a personal liability, but rather, it is limited only to the assets of the estate of such stockholder in his hands. There is nothing in express terms or by implication in the language of the statute that would warrant the conclusion that heirs of a deceased bank stockholder would not· be subject to an assessment liability in proportion to the assets which they receive from such estate if in equity or by law they would be so liable. In *Lawrence* v. *DeBoer*, 273 Mich. 172, such heirs and distributees were held liable.

Defendants, however, rely further upon the statutes of the State of Michigan relating to the administration of estates of decedents, in particular, 3 Comp. Laws 1929, §§ 15712, 15713, 15716 (Stat. Ann. §§ 27.2859, 27.2860, 27.2863), which provide:

"Sec. 19. If the claim of any person shall accrue or become absolute, at any time after the time limited for creditors to present their claims, the person having such claim may present it to the probate court, and prove the same at any time within one year after it shall accrue or become absolute, and if established in the manner provided in this chapter, the executor or administrator shall be required to pay it, if ·he shall have sufficient assets for that purpose, and shall be required to pay such part as he shall have assets to pay; and if real or personal estate shall afterwards come to his possession, he shall be required to pay such claim, or such part as he may have assets sufficient to pay, not exceeding the proportion of the other creditors, in such time as the probate court may prescribe." (3 Comp. Laws 1929, § 15712.)

"Sec. 20. When a claim shall be presented within one year from the time when it shall accrue, and

be established, as mentioned in the preceding section, and the executor or administrator shall not have sufficient to pay the whole of such claim, the creditor shall have a right to recover such part of his claim as the executor or administrator has not assets to pay, against the heirs, devisees or legatees, who shall have received sufficient real and personal property from the estate.'' (3 Comp. Laws 1929, § 15713.)

''Sec. 23. When the heirs, devisees or legatees shall have received real or personal estate, and shall be liable for any debts as mentioned in this chapter, they shall be liable in proportion to the estate they may have respectively received; and the creditor may have any proper action at suit or in law or equity,* and shall have a right to recover his claim against a part or all of such heirs, devisees or legatees, to the amount of the estate they may have respectively received, but no such action shall be maintained unless commenced within one year from the time the claim shall be allowed or established.'' (3 Comp. Laws 1929, § 15716.)

All of the foregoing statutory provisions relate to procedure in probate court and are predicated upon the estate's still being open for the filing and presentation of claims. The provisions of these statutes envisage that delayed and tardy claims, not previously accrued, may be ''allowed'' and ''established'' in the probate court within certain limited periods, and that no creditor shall have an action or suit in law or equity against such heirs ''unless commenced within one year from the time the claim shall be *allowed* or *established.*''

In the instant case, however, such an allowance and establishment in probate court of the claims

---

* R. S. 1846, chap. 72, § 53, which this section of the judicature act purports to re-enact reads in part: ''and the creditor may have any proper *action or suit in* law or equity.''—Reporter.

herein sued upon was an impossibility for the estate was closed before such claims accrued and could be filed.

In *Hirning* v. *Kurle,* 54 S. D. 334 (223 N. W. 212), the court held that—

"The statute * requiring publication of notice to creditors and the filing of claims within a given time thereafter applies only to claims which are collectible from the estate by virtue of having been claims against the decedent in his lifetime, and does not apply to a claim for stockholders' liability arising against the estate as such by virtue of stock ownership."

In *Drain* v. *Stough* (C. C. A.), 61 Fed. (2d) 668 (87 A. L. R. 490):

"It is well settled that a statute, requiring the presentation of claims *against a decedent,* does not apply to claims against his estate arising in the course of administration, that is, to claims against the funds in the hands of the executor or administrator. It was so held under a similar statute of California requiring the presentation of claims to an executor. *Miller & Lux, Inc.,* v. *Katz,* 10 Cal. App. 576 (102 Pac. 946). There the corporate stock was owned by the deceased. After his death the corporate debt was created. It was held that the estate was liable for its proportion of the debt, fixed by statute upon a stockholder, and that the claim therefor need not be presented to the executor. See, also, *Plummer* v. *Light,* 139 Wash. 670 (247 Pac. 1022). The supreme court of the State of Montana, with laws similar to Washington and California with reference to the presentation of claims against a decedent, in the case of *Springhorn* v. *Dirks,* 72 Mont. 121 (231 Pac. 912), held, under a statute identical

---

* See 3 Comp. Laws 1929, § 15674 *et seq.* (Stat. Ann. § 27.2821 *et seq.*).—Reporter.

with Rev. Stat. 5152 (12 USCA, § 66), it was not necessary to present a claim to the executor of the will of a deceased stockholder in a State bank as a basis for a recovery of the assessment made for the benefit of creditors of the bank, following *Zimmerman* v. *Carpenter,* 84 Fed. 747, and *Rankin* v. *Miller,* 207 Fed. 602.''

The probate statutes relating to the filing, allowance and establishment of such claims and the period of limitations within which suit should be brought against heirs receiving assets from such estates are, therefore, insufficient and inadequate with reference to claims against the estate which did not accrue or become absolute before the limit of time during which the probate court is given power to afford a remedy; and are inapplicable to the claims arising out of stock assessments sued upon by the receiver in this case.

The probate court has exclusive jurisdiction of the administration and settlement of the estates of deceased persons, except where its remedies are inadequate or the interposition of equity is necessary for some auxiliary purpose. *Nolan* v. *Garrison,* 156 Mich. 397; *Graham* v. *Graham,* 171 Mich. 307; *Brooks* v. *Hargrave,* 179 Mich. 136; *In re Estate of Rahn,* 241 Mich. 29; *Burgess* v. *Jackson Circuit Judge,* 249 Mich. 558.

In *Rankin* v. *City of Big Rapids,* 66 C. C. A. 568 (133 Fed. 670), a bill was filed by the receiver of an insolvent national bank to collect a stock assessment from the trustee of a trust fund created by the will of a deceased stockholder and a legatee of the deceased stockholder. In that case the estate had been fully administered before the assessment was levied. The final account of the executor had been filed and allowed and the executor discharged on August 10,

1900. The assessment was not levied until December 16, 1901. The bank stock which had proven worthless prior to the closing of the estate had not been accepted by the trustee or the legatee. Sufficient funds had been received by the trustee and the legatee from the estate to satisfy the claim on the stock assessment. On appeal in the circuit court of appeals, the court said, p. 577:

"There are, it is true, some expressions of judges which, taken by themselves, and without regard to the subject of decision, might be construed into a recognition of the proposition for which the appellees contend, namely, that there is no law recognized in Michigan for the enforcement of the obligations of deceased persons other than those comprised in its statutory probate system, and that that system affords no remedy for an obligation which does not become absolute before the limit of time during which the probate court is given power to afford a remedy. We are not aware of any decision elsewhere which attributes to the probate system of any State such a consequence, although many of them contain provisions from which an intention to exclude all other remedies could be as reasonably implied as from those in Michigan. * * *

"It is unnecessary to go into argument to vindicate the principle of equity to which the complainant appeals. 'Legatees,' says Story, 'are always compellable to refund in favor of creditors; because the latter have a priority of right to satisfaction out of the assets.' 1 Equity Jurisprudence (13th Ed.), § 92. In *Noel* v. *Robinson*, 1 Vern. 90, 94 (23 Eng. Rep. 334), the Lord Chancellor said: 'The common justice of this court will compel a legatee to refund. It is certain that a creditor shall compel a legatee to refund.' The legatee ought not to hold as a gift from the estate that which belongs to the creditors. * * *

"We think the case of *Allen* v. *Conklin*, 112 Mich. 74, must be regarded as refuting the contention that

the probate laws afford the only remedy a creditor may have in Michigan for the recovery of a claim against the estate of a deceased person, and as establishing the proposition that, when those laws do not avail to protect equities arising from special circumstances, its equity courts will give relief by applying the principles and remedies peculiar to that jurisdiction. And such is the course of decisions in other States in reference to their probate systems and the jurisdiction of courts of law and equity when the probate laws are not adequate to give a remedy.''

The case of *Allen* v. *Conklin,* 112 Mich. 74, referred to by the court in the above citation, was a case in which a bill was filed by one who had been a ward against the executors and heirs of her deceased guardian to obtain an accounting because of fraudulent conversion by the guardian of funds belonging to the ward. Defendants, however, contend that the *Rankin Case* was decided on a mistaken impression of the law in Michigan, as determined by the decisions of the Supreme Court, and that *Allen* v. *Conklin* was not authority for the principle sought to be established in the decision of the *Rankin Case.* Defendants assert that it was only because of fraudulent concealment of the action in the *Allen Case* that equity assumed jurisdiction. Equity is not limited in such cases to those founded on fraud. Jurisdiction is also assumed because of the insufficiency and inadequacy of other remedies.

In *Lawrence* v. *DeBoer, supra,* the facts were similar to those of the case before us. In that case an estate was closed and assets delivered to heirs and distributees under the will of deceased. Before the closing of the estate, an assessment had been made on certain bank stock owned by the deceased. No claim arising out of the assessment was filed against the estate. On suit by the receiver of the bank

against the distributees, to recover the amount of the stock assessments, it was claimed by the heirs and distributees that there was no jurisdiction in equity to reach the assets as the estate had been closed, and that the claim for the stock assessment should have been filed in the probate proceedings. It was held that a claim arising out of a bank stock assessment which was made against the shareholder need not be proved in probate court, but should have been treated as a claim maturing after the death of the stockholder. The court further held that the period of limitations did not commence to run until the cause of action had fully matured through the making of an assessment. In the *Lawrence Case* the liability on the stock assessment attached to the estate before the assets were distributed. In the instant case the assets were distributed and the estate closed before the assessment was made. The Court, however, in the *Lawrence Case* quoted with approval the syllabus from *Andrew* v. *First Trust & Savings Bank of Ida Grove,* 219 Iowa, 1244 (syllabus 260 N. W. 849):

" 'Claim for assessment on stock of bank becoming insolvent after death of stockholder is enforceable against his estate, even though time for filing claims has expired and estate has been closed and assets have passed into possession of heirs or distributees.' "

It was said in the *Lawrence Case* that the executor and the heirs and distributees of the will knew of the assessment at the time the estate was closed and the *injustice* of the situation was emphasized. In the present case the trial chancellor found that the heirs of Edward G. Read were duly apprehensive of the impending assessment before the estate was closed.

*Witters* v. *Sowles,* 32 Fed. 130, is relied upon by defendants in their contention that where the liability for a stock assessment has not attached until after the distribution of the assets, the distributees receiving assets of the estate are not liable therefor. An examination of that case indicates that the assets transferred to the devisees and legatees had been received by them prior to the incurring of the liability by the bank, to meet which, the assessment was made. Such distributees, therefore, had no knowledge or reason to believe that there was an existing debt arising out of the stock assessment. Consequently they would not be in the position of receiving assets of an estate which in equity should be subjected to the liability incurred before distribution. In the instant case, the facts whereon the liability for which the stock assessment was afterward made were known to the defendants during the time of the administration of the estate, prior to its having been closed, and at the time they received the assets of the estate. Courts of chancery are not excluded from taking jurisdiction in proper cases by virtue of statutes relating to probate procedure; but on the contrary their jurisdiction is expressly preserved. 3 Comp. Laws 1929, § 15519 (Stat. Ann. § 27.2619).

In *Mortimer* v. *Potter,* 213 Ill. 178 (72 N. E. 817), where a receiver of a national bank brought suit in equity against devisees named in a will to recover an assessment on stock, the court, under Rev. Stat. § 5151, similar in legal effect to 3 Comp. Laws 1929, § 11945 (Stat. Ann. § 23.52), held:

"Under these sections the executors or trustees were liable for this assessment the same as Kavanaugh would have been if living, and in view of the fact that Mortimer had distributed the estate leav-

ing the claim unpaid, and each devisee had received more than the amount of the entire assessment, they are each liable therefor in equity."

The receipt of assets by the defendants from this estate with the knowledge or reason to believe that their conduct was placing such assets beyond the reach of claims arising out of the stock assessments when such assets would have been subjected to the payment of such claims had the estate not been closed, and when they knew that such assessment was imminent, was inequitable, and presents an occasion for the interposition of a court of equity to subject such assets to plaintiff's rightful claims.

The decree of the trial chancellor is affirmed, with costs to plaintiff.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred.