BICKNELL *v.* HEMMETER.

1. BANKS AND BANKING—ENFORCEMENT OF STOCKHOLDER'S LIABILITY.
 The liability of a stockholder may be enforced in a suit at law or in equity by a bank in process of liquidation or by any receiver or other officer succeeding to the legal rights of the bank (3 Comp. Laws 1929, § 11945).

2. SAME—NATURE OF STOCKHOLDER'S RELATION TO BANK.

The obligation of a stockholder is both contractual and statutory, and the statutory assessment against bank stock made after the death of a stockholder becomes the obligation of his estate (3 Comp. Laws 1929, § 11945).

3. SAME—WIDOW AS LEGATEE AND OWNER OF STOCK SUBJECT TO ASSESSMENT.

Bank stockholder's widow who was also executrix and residuary legatee under his will, who petitioned the probate court to make distribution according to law and the terms of the will and gave no indication she refused to accept the stock which had been listed as an asset in the inventory, *held,* liable as the real and beneficial owner thereof and subject to stock assessment notwithstanding no transfer of the stock appeared on the books of the bank (3 Comp. Laws 1929, § 11945).

McALLISTER, J., dissenting.

Appeal from Saginaw; Martin (William H.), J. Submitted April 14, 1939. (Docket No. 29, Calendar No. 40,431.) Decided July 6, 1939.

Bill by Donald Bicknell, receiver of People's American State Bank, against Carrie Hemmeter and others to enforce a bank stock assessment and for other relief. Decree for plaintiff. Defendant Hemmeter appeals. Affirmed.

*Nash & Nash,* for plaintiff.

*George C. Ryan,* for defendant.

BUSHNELL, J. This is an appeal from a decree requiring defendant Carrie Hemmeter, widow of William F. Hemmeter, to pay an assessment upon 455 shares of the capital stock of the People's American State Bank, of Saginaw. Mr. Hemmeter, the owner of this stock, died on April 25, 1931, and no transfer of the stock has ever been made upon the books of

the bank. His last will and testament contains the following:

"Second, I give, devise and bequeath to my beloved wife, Carrie Hemmeter, all of my property, real, personal and mixed for her sole use and benefit, with full power and authority to sell, lease and dispose of and to execute and acknowledge all instruments and conveyances, excepting and providing, however, that our homestead shall not be sold and shall always remain the home for my descendants.

"Third, I bequeath to my son, Arthur W. Hemmeter, the sum of $1,500 to be paid to him in cash after my death.

"Fourth, I will, devise and bequeath all the residue of my estate real, personal and mixed, that shall be left after the death of my said wife and not having been used or disposed of by her during her lifetime to my son, Arthur W. Hemmeter."

The will was admitted to probate July 13, 1931, on petition of Mrs. Hemmeter, the executrix. The inventory lists the stock in question as having an appraised value of $19,337.50, the total value of the estate being $38,462.25. No claim was presented to the estate with respect to the assessment in question, although a notice was sent by the receiver. The final account of the executrix is silent as to the bank stock. It shows that all the money received was disbursed and contains the usual request for the assignment of the residue "according to law and terms of the will." This account was allowed and the estate was closed on April 5, 1933.

Plaintiff, who is a successor receiver of the bank, testified that a conservator was appointed sometime in February of 1933 and that the stock assessment was levied on October 23, 1934. A dividend was paid upon the bank stock several months after the death of Mr. Hemmeter.

The trial judge filed a written opinion in which he observed that the order assigning the residue and closing the estate was entered approximately 51 days after the bank holiday had been declared, and that, although Mrs. Hemmeter consulted a competent attorney, now deceased, who advised her not to accept the stock, and her son, Arthur, intimated a willingness to take it, that she had knowledge of the bank's refusal to transfer the stock to Arthur, and that:

"At no time prior to the final order closing the estate and the distribution of the assets thereof did the defendant refuse in writing, or indicate to the judge of probate in any manner whatsoever that she would refuse to take under the terms of the will, or refuse to accept any part of the estate under the terms of the will."

The court found that the assets of the estate had been distributed to defendant, who accepted them subject to the stock assessment, and that she is the real owner of the stock in question.

Mrs. Hemmeter's appeal is largely based upon the inequity of the court's decree and on the proposition that she cannot be held liable in the absence of a contractual obligation on her part.

The liability of a stockholder may be enforced in a suit at law or in equity by a bank in process of liquidation or by any receiver or other officer succeeding to the legal rights of the bank. 3 Comp. Laws 1929, § 11945 (Stat. Ann. § 23.52). The obligation of a stockholder is both contractual and statutory, and the statutory assessment against bank stock made after the death of a stockholder becomes the obligation of his estate. *Lawrence* v. *DeBoer,* 273 Mich. 172.

Mrs. Hemmeter could have refused to accept the stock, but there is no indication that she ever did anything to accomplish this. Mrs. Hemmeter peti-

tioned the probate court to distribute the residue of the estate according to the terms of the will, and the court made an order to that effect. The stock belonged to the estate and was within her control as executrix. It would be inconsistent to permit her to seek distribution of the residue in her capacity as executrix and also permit her as an individual to prevent that distribution.

In *Re Smith's Estate*, 282 Mich. 566, bank stock was omitted from the inventory of the estate but subsequent dealings with respect to it were held to be inconsistent with the argument that Mrs. Smith never became its owner.

In *Fors* v. *Thoman*, 267 Mich. 148, Mrs. Thoman was held to be an owner upon the death of her husband where bank stock was held by them jointly even though she paid nothing for it and claimed to have no knowledge that her name had been placed upon the certificate, although she had indorsed and deposited a dividend check in their joint account. See, also, *Keyser* v. *Hitz*, 133 U. S. 138 (10 Sup. Ct. 290).

Mrs. Hemmeter was a real and beneficial owner of bank stock and should be held liable for the assessment thereon. *Glass* v. *Lock*, 286 Mich. 628; *Schlener* v. *Davis* (C. C. A.), 75 Fed. (2d) 371 (99 A. L. R. 498); *Forrest* v. *Jack*, 294 U. S. 158 (55 Sup. Ct. 370, 96 A. L. R. 1457), and other cases cited in annotations in 99 A. L. R. 505.

Appellant argues that we should follow the rule stated in *Andrew* v. *First Trust & Savings Bank of Ida Grove*, 219 Iowa, 1244 (260 N. W. 849). That case has facts quite similar to the instant case and there the court found that there was no liability on the part of the widow for the assessment because such liability was strictly contractual and consent to become a stockholder was not established even

though the widow had received dividends and had accepted possession of the stock. Liability was imposed, however, upon the estate. The rule we have followed in Michigan is that the stockholder's liability, although contractual, is also statutory, a situation not considered by the Iowa court. See *In re Burger's Estate,* 276 Mich. 485; *Fors* v. *Thoman, supra,* and *In re Smith's Estate, supra.*

Repudiation of ownership not having been effectually established, the residue of the estate having been assigned to Mrs. Hemmeter in accordance with the will, and not having declined to accept the bank stock, she must be held to be its owner and liable for the assessment.

The decree of the circuit court is affirmed, with costs to appellee.

BUTZEL, C. J., and WIEST, SHARPE, POTTER, CHANDLER, and NORTH, JJ., concurred with BUSHNELL, J.

McALLISTER, J. (*dissenting*). Carrie Hemmeter received the shares of stock upon which plaintiff is seeking to hold her for assessment liability solely as executrix of the will of her husband and in the course of administration of his estate. In the inventory of the estate, the defendant charged herself as executrix with the receipt of the stock. In her final account the stock did not appear as an asset of the estate but the account did show that the debts of the estate exactly equalled the assets. Defendant filed her petition for allowance of final account and assignment of residue. There was no residue to be assigned, and defendant knew this to be the fact at the time she filed her petition. Reference therein to "residue" was probably due to the use of a printed form; but under the circumstances, it was meaningless. Defendant never accepted the stock,

except insofar as she might be said to have done so as executrix. She received nothing whatever out of the estate except her widow's allowance. Even if the assessment had been filed and allowed as a claim against the estate, it would have been subject to prior payment of the widow's allowance. She took nothing except that to which she was entitled by statute. No act of hers resulted in disadvantage to any creditor. Our holdings in *Lawrence* v. *De-Boer*, 273 Mich. 172, and *Schutz* v. *Read*, 284 Mich. 548, were based upon equitable considerations, and held that a party could not accept assets from an estate with knowledge or reason to believe that his conduct would result in placing such assets beyond the reach of an impending stock assessment. A widow's allowance is not, in any event, within the reach of such an assessment. It would be most inequitable to subject defendant to liability for stock assessments in the instant case. If she had received anything from the estate except that to which she was entitled by statute, there would be a basis for such liability. What happened to the stock is a mystery, and there is no intimation of its solution in the record. It may have been that the stock was sold by the executrix and the funds used to pay expenses of the estate; but this would not subject defendant to individual liability. The burden of proof was upon plaintiff to show that defendant received the stock or accepted it in her individual capacity, in order to charge her with liability for the stock assessment. No such proof having been adduced, the decree against defendant should be reversed, with costs to defendant.