BICKNELL *v.* SECOND. NATIONAL BANK & TRUST CO.

1. BANKS AND BANKING—STOCK ASSESSMENT—DELAY IN PAYMENT—
   INTEREST.
   Interest on assessment on stock in State bank was properly
   decreed in suit by bank receiver against successor testamentary
   trustees notwithstanding bank had been designated by testator
   as executor of will and its receiver had had possession of the
   estate's assets, as special administrator, executor and testa-
   mentary trustee, where, while acting in last-mentioned capacity,
   he received written directions from the beneficiaries, all of
   whom were adults, not to accept the bank stock from the
   estate of the testator, and while receiver was possessed of
   the assets the beneficiaries resisted payment of the assess-
   ment.

2. SAME—STOCK ASSESSMENT—INTEREST—EQUITY.
   Decree requiring payment of interest on assessment on stock
   in State bank was equitable where assessment was levied
   while bank's receiver was in charge of estate's assets, bene-
   ficiaries all resisted payment of the assessment, and receiver
   failed to turn over assets to successor testamentary trustees
   promptly, in absence of showing that had assets been turned
   over promptly assessment would have been paid, there is no
   showing of loss to the trust estate, and assets which would
   have been sold to pay assessment materially increased in value
   while retained.

3. SAME—STOCK ASSESSMENT— IMPOUNDED DEPOSITS — SET-OFFS—
   INTEREST.
   Interest on assessment on stock in State bank could not be
   avoided because receiver thereof, who was in charge of assets
   of deceased stockholder's estate when assessment was levied,
   and successor trustees failed to apply deposits of the estate im-
   pounded in the closed bank toward payment of the assessment
   since the impounded deposits were in custody of the receiver
   as such and not available to the trustees of the estate nor
   usable as a set-off against the assessment.

4. SAME—STOCK ASSESSMENT—NOTICE—DEMAND—LEGAL INTEREST.
   After proper notice and demand for payment of assessment
   on State bank stock, interest accrues at legal rate.

5. SAME—INTEREST ON STOCK ASSESSMENT—ESTATES OF DECEDENTS
   —TRUSTS—RECEIVERS.
   Assets of estate of deceased stockholder of State bank in hands
   of testamentary trustees are primarily liable for interest on
   stock assessment and beneficiaries of trust estate are ·sec-
   ondarily liable therefor to the extent of receipts from the
   trust estate or from the estate of the deceased stockholder
   where such beneficiaries resisted payment of the assessment
   and receiver of bank, while serving as trustee of the estate,
   is found to have acted in good faith and was not derelict in
   the discharge of his duties.

Appeal from Saginaw; O'Neill (James E.), J.
Submitted January 9, 1940. (Docket No. 114, Cal-
endar No. 40,848.)   Decided April 1, 1940.

Bill by Donald Bicknell, receiver of Bank of Sagi-
naw, against Second National Bank & Trust Com-
pany and another, trustees under the last will of
Edgar D. Church, deceased, and others to enjoin
trustees from disposing of assets and to compel pay-
ment of stock assessment. Decree for plaintiff re-
quiring payment of interest. Defendants appeal.
Affirmed.

*Donald W. Gilbert,* for plaintiff.

*William C. O'Keefe,* for defendants.

NORTH, J.   At his death, March 19, 1933, Mr. Ed-
gar D. Church held 131 shares of stock, par value
$100 per share, in the Bank of Saginaw, which had
been closed since February 11, 1933. The bank, act-
ing through its receiver, served as executor of the
Church estate; and after the estate was closed the
bank continued to hold the assets of the estate. Mr.

Church's bank deposits in the amount of $8,284.70 were impounded in the closed bank. The balance of the assets of the Church estate were retained by the bank in its capacity as testamentary trustee named in Mr. Church's will. While the bank was so possessed of the assets of the Church estate and on September 5, 1934, a 100 per cent. statutory stockholders' liability was levied. On December 29, 1934, there was notice and demand of payment of this assessment.

The testamentary trustee, acting under the written directions of the beneficiaries, refused to receive from the Church estate the 131 shares of stock in the closed bank. Obviously because the receiver of the bank found himself attempting to represent conflicting interests, he petitioned the probate court to appoint a successor trustee or trustees. The Second National Bank & Trust Company of Saginaw and John W. Symons were so appointed October 22, 1935. The bank receiver, believing he had a lien on the assets of the Church trust estate to secure payment of the $13,100 stock assessment against the stock formerly held by Mr. Church, refused at first to turn over to the successor trustees the assets of the trust estate; but later and by January 14, 1936, the bank receiver delivered to the successor trustees the trust estate assets, excepting the impounded bank account of $8,284.70 and certain other assets designated in the order of the probate court. The assets delivered had a ledger value of $22,399.90.

The estate of Edgar D. Church, deceased, was closed before the stockholders' liability of 100 per cent. was levied, and hence no claim was filed by the bank receiver against the Church estate. The successor trustees, acting in accord with the desires of the beneficiaries, refused to pay the statutory stock

assessment, and this bill in equity was filed September 22, 1936, by the bank receiver to enjoin the successor trustees from disposing of the assets of the trust estate and to compel payment of the stock assessment by the successor trustees or by the beneficiaries of the trust or legatees of the Church estate. Pending the suit the stock assessment was paid (December 31, 1937), but defendants resisted payment of interest which the bank receiver claimed had accrued on the assessment between the date when its payment was demanded and the date of its payment. After a full hearing the circuit judge decreed payment of this interest item in the amount of $1,966.82. Defendants have appealed.

In substance it is appellants' claim that they should not be decreed to pay the demanded interest because they assert the receiver of the bank had in his possession assets of the trust estate from which the assessment could have been paid and the accrual of interest avoided; and further appellants state in their brief:

"It is the position of the defendant trustees that plaintiff in this case made no effort to press the collection of its claim, neglected to enforce payment thereof from the estate in its hands, has been guilty of laches and is entitled to no interest from defendant trustees, because it negligently failed to stop the running of interest by taking the proper measures while it itself was trustee, and unlawfully refused to turn over the assets to the successor trustees."

The record does not justify the appellants' contention that the receiver of the bank as trustee of the testamentary trust could have and should have made prompt payment of the 100 per cent. assessment. The defendant beneficiaries of this trust are

adults and throughout the period during which the receiver was possessed of the trust assets the beneficiaries resisted payment of the stock assessment. These beneficiaries gave written notice to the trustee on April 16, 1934, which was prior to the levy of the stock assessment, not to accept the bank stock from the Church estate as part of the testamentary trust property. Obviously this was for the purpose of avoiding the payment of an anticipated statutory stock assessment out of trust funds.

A dividend in the amount of $3,728.12 was declared in the Church deposits which were impounded in the Bank of Saginaw when it closed. Representatives of the closed bank sought to apply this dividend as a payment on the Church stock assessment and thereupon the appellants herein instituted suit to recover the amount of the above-noted dividend. Later the suit was dismissed by stipulation. There is no claim that the beneficiaries of the testamentary trust ever requested payment of the stock assessment by the trustee. Instead it was not until more than 15 months after all of the assets of the testamentary trust had been turned over to appellants and more than 15 months after the present suit was brought to enforce its payment that the stock assessment was paid, December 31, 1937.

Appellants complain that when the Bank of Saginaw, acting through its receiver, was discharged as testamentary trustee it neglected and refused to turn over the assets of the trust estate to the successor trustee. This cannot be accepted as tending to support appellants' claim that under the circumstances it is inequitable now to decree payment of interest. Seemingly the receiver believed he had a lien upon the trust assets to secure payment of the stock assessment and for this reason refused for a

time to surrender the assets of the trust estate. But there is no claim that if these assets had been promptly delivered to the successor trustees the 100 per cent. assessment would have been paid. Instead, as noted above, the beneficiaries had notified the former trustee not to accept the bank stock; and the only fair conclusion deducible from this record is that appellants at all times opposed payment of the stock assessment from the trust estate. In an order made by the probate judge in the estate of Edgar D. Church, deceased, as late as January 14, 1936, the following recital was made: "And it further appearing that the aforesaid heirs, legatees, devisees and next of kin contest said claim and deny all liability of said estate with respect to said stock assessment."

While the foregoing is not an adjudication of the recited facts, confessedly it is persuasive of the true factual situation and supports the conclusion that it was not the withholding of trust assets from the possession of the successor trustees which caused the delay in paying the stock assessment.

Further, there is no showing of a loss resulting to the trust estate because of the retention of the trust assets by the bank receiver after the successor trustees were appointed. The undisputed testimony is that the assets, which it would have been necessary to have sold had the 100 per cent. stock assessment been promptly paid, materially increased in value during the interim they were retained by the bank.

In so far as appellants urge that since the closed bank had deposits of Mr. Church impounded in excess of $8,000, therefore the trustee was negligent in not using such funds to meet the stock assessment, their contention is without merit. The impounded deposits were in custody of the receiver of the bank

and not available to the trustee of the Church testamentary trust. This deposit could not be used as a set-off against the assessment levied on the Church stock. *Reichert* v. *Farmers' & Workingmen's Savings Bank,* 257 Mich. 500 (81 A. L. R. 1461). There was proper notice of the assessment and demand of payment. Thereafter interest on the assessment accrued at the legal rate. *McCaslin* v. *Albertson,* 279 Mich. 650. In so far as the testamentary trust possesses assets it is primarily liable for payment of the accrued interest in the instant case; and to the extent of receipts from the trust estate or from the estate of Edgar D. Church, deceased, the beneficiary defendants are secondarily liable (*Schutz* v. *Read,* 284 Mich. 548), as decreed in the circuit court. We are in accord with the circuit judge's holding that the receiver of the Bank of Saginaw while serving as trustee of the Church testamentary trust acted in good faith and was not derelict in the discharge of his duties.

The decree entered in the circuit court is affirmed, with costs to appellees.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred.